Abbas Kazerounian, Esq. (SBN: 249203)
KAZEROUNI LAW GROUP, APC
245 Fischer Ave, Suite D1
Costa Mesa, CA 92626
ak@kazlg.com
(800) 400-6808; Fax 1-800-520-5523

Theodore O. Bartholow, III*
KELLETT & BARTHOLOW PLLC
11300 N. Central Expy., Suite 301
Dallas, TX 75243
thad@kblawtx.com
(214) 696-9000; Fax (214) 696-9001
*motion to appear pro hac vice forthcoming

Attorneys for Plaintiff Bernard J. Patterson

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD J. PATTERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & CO.; WELLS FARGO BANK, N.A.; and EARLY WARNING SERVICES, LLC,<br><br>Defendants. | Case No.:   **3:23-cv-3858**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>1) **THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;**<br>2) **THE ELECTRONIC FUNDS TRANSFER ACT;**<br>3) **THE FAIR CREDIT REPORTING ACT;**<br>4) **NEGLIGENCE / GROSS NEGLIGENCE.**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Bernard J. Patterson, individually and on behalf of all others similarly situated, brings this class action complaint against Defendants Wells Fargo & Co. ("WFC"), Wells Fargo Bank, N.A.

("WFB"), ("WFC," and together with WFB, "Wells Fargo"), and Early Warning Services, LLC ("Early Warning"), and alleges as follows:

## I. INTRODUCTION

1.      Just as one Wells Fargo fake account scandal concludes, another emerges. This time, Wells Fargo is engaging in a practice known as synthetic identity fraud, which is where fraudsters (here, Wells Fargo, with assistance from Defendant Early Warning) use a combination of fake and real personal identification information ("PII") to open unauthorized accounts in their consumer victims' names. With these unauthorized accounts thus opened, Wells Fargo secretly processes unauthorized electronic funds transfer transactions in its victims' names using these unauthorized accounts (money laundering), and, with assistance from Early Warning, Wells Fargo also fraudulently obtains its victims' valuable true and correct personal identification and personal financial information ("PFI"). The victims' PFI that Wells Fargo fraudulently obtains through this scheme is the most private, sensitive, and valuable financial information a consumer has – it literally includes the victims' entire personal banking balance and transaction history for every legitimate bank account they maintain going back for years, as well as full account numbers, account open and close dates, and all of the detailed PII each of the victims' banks associate with each account. It is everything necessary to steal a person's financial identity and ultimately, it is everything necessary to steal everything the unwitting victims have in their legitimate bank accounts.

## II. PARTIES

2.      Jay Patterson ("Plaintiff" or "Patterson"), a natural person, is a resident of the state of Arkansas. Patterson works as a forensic accounting expert specializing in mortgage servicing-related accounting issues. He has provided expert services in hundreds of litigated matters in courts throughout the United States, including numerous cases involving Wells Fargo's mortgage servicing business. Because of the nature of his work, Patterson has consciously avoided opening bank accounts with financial institutions – like Wells Fargo – that are engaged in the mortgage servicing business.

CLASS ACTION COMPLAINT

3.    Defendant Wells Fargo & Co. ("WFC") is a diversified financial services company headquartered in San Francisco, California that provides banking, insurance, investments, mortgage banking, and consumer finance through banking stores, the internet, and other distribution channels to customers, businesses, and other institutions in all 50 states and in other countries.  WFC may be served through its registered agent, CSC – Corporation Incorporating Service, 251 Little Falls Drive, Wilmington, Delaware 19808.

4.    WFC exercises specific and financial control over the operations of Defendant Wells Fargo Bank N.A. ("Wells Fargo Bank"), dictates the policies, procedures, and practices of Wells Fargo Bank, exercises power and control over the specific activities upon which the claims herein are based. WFC is also one of seven U.S. Banks that founded and own Defendant Early Warning Services LLC.

5.    Defendant Wells Fargo Bank, N.A. is a national banking association that is a subsidiary of Wells Fargo & Co.  While Wells Fargo Bank's designated "headquarters" (for purposes of the National Bank Act) is located in Sioux Falls, South Dakota, Wells Fargo Bank's actual principal place of business is in San Francisco, California.  Wells Fargo Bank may be served through Corporation Service Company d/b/a CSC-Lawyers Incorporation Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833. Among other things, Wells Fargo Bank provides personal and commercial banking services and is WFC's principal subsidiary.

6.    Defendant Early Warning Services, LLC is a Delaware limited liability corporation, which may be served with process via its registered agent, Cogency Global, Inc., 1325 J Street, Suite 1550, Sacramento, California 95814.  Early Warning is a business that Wells Fargo and the nation's six other largest banks collectively established and continue to collectively own and operate.

7.    Early Warning's foundational business is a specialty credit reporting agency that collects and publishes detailed "trade line" information regarding consumers' personal and business bank accounts, provides identity verification services to banks and other financial services businesses when they open new consumer accounts, acts as an information security service provider, specializing

CLASS ACTION COMPLAINT

in identification and prevention of identity fraud, and owns and operates the well-known peer-to-peer electronic funds transfer system, "Zelle."

### III. JURISDICTION AND VENUE

8.    The Court has jurisdiction over the lawsuit because the suit arises under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud), and the Fair Credit Reporting Act, ("FCRA") 15 U.S.C. § 1681.

9.    This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant.  Upon information and belief, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

10.    The Court also has subject matter jurisdiction over Plaintiff's non-federal claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal claims.

11.    This Court has general personal jurisdiction over Wells Fargo Bank, N.A., because its principal place of business is in San Francisco, California.

12.    This Court has general personal jurisdiction over Wells Fargo & Co., because its principal place of business is in San Francisco, California.

13.    This Court also has general personal jurisdiction over Wells Fargo Bank, N.A., because its contacts with California are so constant and pervasive as to render it essentially at home in California.

14.    This Court also has general personal jurisdiction over Wells Fargo & Co., because its contacts with California are so constant and pervasive as to render it essentially at home in California.

15.    The exercise of specific personal jurisdiction over Early Warning, Wells Fargo & Co., and Wells Fargo Bank, N.A. is consistent with due process, as Wells Fargo & Co., Wells Fargo Bank, N.A., and Early Warning regularly conduct and/or solicit business in, engage in other persistent courses

CLASS ACTION COMPLAINT

of conduct in, and derive substantial revenue from services provided to, persons in this District and in California.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because the Court has jurisdiction over Defendants and Defendants have sufficient contacts with this District, the situs of Wells Fargo's principal place of business.

17.     Venue is also proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint occurred in this District.

## IV.  INTRADISTRICT ASSIGNMENT

18.     Because WFC maintains its headquarters in San Francisco, and Wells Fargo Bank N.A.'s principal place of business is in San Francisco, under Local Rule 3-2(e), the proper venue for this case is the San Francisco Division of the Northern District of California.

## V.  FACTUAL ALLEGATIONS

### *Summary of Defendants' Wrongdoing*

19.     Defendant Wells Fargo Bank opened unauthorized consumer checking accounts in victims' names without their knowledge or consent.[1] Many of Defendants' victims, including Plaintiff, had no pre-existing business relationship with Wells Fargo.

20.     Wells Fargo Bank uses Early Warning Services to provide "identity verification" services when it opens new consumer banking accounts.

21.     Early Warning is able to provide identity verification services to Wells Fargo and other financial institutions because it is a specialty consumer credit reporting agency that collects and reports

---

[1] The practices described herein are separate and distinct from Wells Fargo's well-documented and relatively recent so-called "sales practices" scandal, in which Wells Fargo's employees secretly opened consumer accounts for millions of existing Wells Fargo customers in order to meet unrealistic sales goals/requirements imposed upon them by Wells Fargo.

CLASS ACTION COMPLAINT

consumers' detailed personal and business banking information from its more than 2,500 member institutions, which comprise virtually all of the nation's banks and credit unions.

22.     Early Warning knew that the personal identification information associated with Wells Fargo's unauthorized bank accounts did not match the personal identification information Early Warning's other member institutions had furnished to Early Warning regarding the victims' legitimate bank accounts.

23.     Yet, on information and belief, at Wells Fargo's request, Early Warning falsely "verified" Plaintiff's and the other victims' identities in connection with Wells Fargo's opening of unauthorized consumer checking accounts in their names.

24.     Once opened, Defendant Wells Fargo Bank used these unauthorized consumer checking bank accounts to process unauthorized financial transactions in the victims' names.

25.     In Mr. Patterson's case, Wells Fargo Bank transferred at least $4,992 to an unknown third party via ACH using the unauthorized account Wells Fargo opened in Patterson's name. To this day, Patterson does not know what the source of this money was (who it belonged to) or how it came to be in his unauthorized Wells Fargo account.

26.     Wells Fargo also used the existence of Plaintiff's and its other victims' unauthorized consumer checking accounts as a pretext for fraudulently obtaining its victims' comprehensive file disclosures (aka "credit reports") from Early Warning.

27.     Because Early Warning's credit reports contain the victims' confidential PII furnished to Early Warning by its member institutions with respect to their customers' personal and business banking accounts, Wells Fargo was able to use the accounts it fraudulently opened in the victims' names using false PII to obtain the victims' true PII, as well as their detailed PFI, including years of transaction and balance history for virtually every banking account of every victim.

28.     Then, despite having actual knowledge that the PII it associated with the victims' accounts was false and contradicted by the PII associated with the victims' other legitimate bank

CLASS ACTION COMPLAINT

accounts included on Early Warning's consumer credit reports, Wells Fargo Bank intentionally furnished false and defamatory trade line information to Early Warning regarding the unauthorized consumer checking accounts it opened in the victims' names.

29.     In turn, despite knowing that the alleged PII associated with Wells Fargo's victims' accounts was false and contradicted by the PII furnished by the financial institutions where the victims maintained legitimate bank accounts, Early Warning repeatedly published this false and defamatory trade line information to third parties – including false PII and false PFI regarding account status, unauthorized transactions, and account balances – for the victims' unauthorized Wells Fargo accounts.

30.     Even upon acknowledging that victims' accounts were opened fraudulently, Defendants Wells Fargo and Early Warning have failed to inform the recipients of their previously published false and defamatory trade line information regarding the victims' unauthorized bank accounts that such information was false. To Plaintiff's knowledge, to this day, these errors have not been cured.

31.     Defendants worked together to effectuate this scheme, and they profited from this scheme.

### *Plaintiff Jay Patterson's Experience*

32.     Without his prior knowledge or consent, on March 10, 2022, Wells Fargo opened a consumer checking account in Plaintiff Bernard J. Patterson's name.

33.     The personal identification information for Patterson that Wells Fargo associated with the unauthorized Patterson account included a combination of true PII (specifically his full name, address, and social security number), and false PII (including false birthday, telephone number, driver's license state, driver's license number, driver's license expiration date, and email address).

34.     Upon information and belief, in connection with opening the unauthorized Patterson account, Wells Fargo used Early Warning's identity verification service, and Early Warning falsely "verified" Patterson's identity even though Wells Fargo provided demonstrably false non-public PII for Patterson, which was incompatible with the otherwise consistent and correct non-public PII

7

furnished to Early Warning by the financial institutions where Patterson maintains and/or previously maintained legitimate bank accounts.

35.     At the time Wells Fargo opened the unauthorized Patterson account, Patterson's full name and address were publicly available through property tax records, court filings, and other official records.

36.     Of the true and correct PII Wells Fargo associated with the unauthorized Patterson account, only his social security number was (ostensibly) non-public information.

37.     However, according to the Identity Theft Resource Center, in 2022 alone there were 1,802 data breaches that have exposed more than 442,000,000 Americans' social security numbers and other PII.  Much of this compromised PII has, in turn, been made available for purchase on the so-called "dark web," and through other means.

38.     Patterson did not provide Wells Fargo with any of his confidential PII.

39.     Patterson did not want a bank account with Wells Fargo and did not request or authorize anyone to request that Wells Fargo set up a bank account in his name.

40.     Patterson has never opened a checking account with Wells Fargo, and at the time that Wells Fargo opened the unauthorized Patterson account, Patterson had no pre-existing business relationship with Wells Fargo.

41.     On March 11, 2022, the day after Wells Fargo opened the unauthorized Patterson account, Wells Fargo obtained Early Warning's credit report for Mr. Patterson, also without Patterson's knowledge or consent.

42.     Wells Fargo had no right to obtain Patterson's Early Warning credit report, and Early Warning had no reason to believe that Wells Fargo had a right to obtain Patterson's Early Warning credit report.

43.     Early Warning's credit report for Mr. Patterson includes trade lines for all of Patterson's business and personal bank accounts. Each of these trade lines includes current and historical balance

CLASS ACTION COMPLAINT

and transaction information for each of the relevant accounts, which is information Mr. Patterson's banks regularly furnish to Early Warning. Each of these trade lines also includes Mr. Patterson's PII, which is also furnished to Early Warning by Mr. Patterson's banks. Other than the trade line for Wells Fargo's unauthorized Patterson account, the trade lines on Patterson's Early Warning credit report contain accurate PII for Patterson.

44. While not all the trade lines on Patterson's Early Warning report include Patterson's driver's license information, the trade lines on his Early Warning credit report that did include Patterson's driver's license information were accurate and incompatible with the information provided by Wells Fargo for the Patterson unauthorized account.

45. Mr. Patterson never put money into or withdrew money out of Wells Fargo's unauthorized Patterson account.

46. On June 17, 2022, more than three months after Wells Fargo opened the unauthorized Patterson account, Mr. Patterson received his first monthly checking account statement from Wells Fargo for the unauthorized Patterson account. Wells Fargo's statement is dated June 7, 2022. This was the first time that Patterson had any knowledge about Wells Fargo's unauthorized Patterson account.

47. Mr. Patterson and his wife were in the process of obtaining a mortgage for the purchase of a home in Arkansas prior to and around the same time that he became aware that Wells Fargo opened the unauthorized bank account in his name. Indeed, Wells Fargo's statements for the unauthorized Patterson account advertised Wells Fargo's mortgage loan products.

48. This June 7, 2022 statement from Wells Fargo for the unauthorized Patterson account said there was a balance of $12 in the account. The June 7, 2022 statement for the unauthorized Patterson account did not state when or how the $12 balance came to be in the unauthorized Patterson account, and it did not reveal any prior transaction activity on the account.

CLASS ACTION COMPLAINT

49.     Within approximately 20 minutes of opening his mail to discover Wells Fargo's June 7, 2022 statement for the unauthorized account, Patterson contacted Wells Fargo by telephone to try to find out what was going on / why he received a statement for a bank account he never opened.

50.     Mr. Patterson navigated Wells Fargo's interactive voice response ("IVR") pre-recorded telephone message tree to request customer service and, after spending a while on hold, Mr. Patterson eventually was able to speak with a Wells Fargo representative.

51.     After providing his name and the account number for the Wells Fargo unauthorized Patterson account to the Wells Fargo representative, Mr. Patterson informed the representative that he in fact had no account with Wells Fargo and never has had an account with Wells Fargo.

52.     After hearing this, the Wells Fargo representative would only tell Mr. Patterson that the account was opened in March of 2022, before transferring Mr. Patterson to another Wells Fargo representative.

53.     The second Wells Fargo representative with whom Patterson spoke on his June 17, 2022 telephone call with Wells Fargo informed Patterson that Wells Fargo would "put a freeze" on the account. The purpose or alleged effect of this "freeze" on Wells Fargo's unauthorized Patterson account was not explained to Patterson, and the second Wells Fargo representative indicated that she was unable to tell Patterson anything else about the unauthorized bank account Wells Fargo had opened in his name.

54.     Wells Fargo sent Mr. Patterson a letter dated June 24, 2022, which confirmed that Mr. Patterson did not open or have knowledge of any account with Wells Fargo.

55.     Concerned that the unauthorized account Wells Fargo opened in his name could be a sign that he was the victim of identity fraud and that he was therefore at risk of incurring financial losses as a result, Patterson pulled his credit reports from Experian, Equifax, and Transunion, the "big three" consumer credit reporting agencies on June 17, 2022.

CLASS ACTION COMPLAINT

56.     None of Patterson's June 17, 2022 Experian, Equifax, or Transunion credit reports revealed any new account with Wells Fargo or any other new account or suspicious transaction activity. Patterson's PII on each of these reports was, however, true and correct – and thus contrary to most of the PII associated with Wells Fargo's unauthorized Patterson account.

57.     Patterson then pulled his credit report from ChexSystems, a consumer credit reporting agency specializing in reporting consumers' checking account applications, openings, and closures, which also contained no reference to Wells Fargo's unauthorized Patterson account.

58.     On August 2, 2022, Patterson pulled his credit report from Early Warning, which he had identified as a specialty credit reporting agency and identity verification service provider that Wells Fargo uses to "verify" new customer identities when opening consumer banking accounts and to whom Wells Fargo reported information regarding consumers' personal and business bank accounts.

59.     Patterson's August 2, 2022 Early Warning credit report includes years of his historical personal and business banking transactions and account balances, all of which is valuable consumer data for Wells Fargo, which specializes in marketing its financial products to consumers based on the products Wells Fargo anticipates its customers will need based on their financial circumstances.

60.     The Early Warning report also provides detailed account information and account status information for every consumer or business bank account associated with the consumer. This includes the bank name, bank routing number, account number, account open date, current account balance and status, previous account balances, date of last status change, and account status history. If the consumer has had any transactions refused due to insufficient funds, these are also reported on the Early Warning report, as well as dates, amounts, and recipient banks for all payments from each of the consumer's bank accounts.

61.     For each consumer or business bank account, Early Warning's banking report also includes detailed PII for the consumer, including their name, phone number, address, social security

CLASS ACTION COMPLAINT

number, date of birth, email addresses, and in some cases, the form of identification reviewed by the bank, including the consumer's driver's license number, issuing state, and expiration date.

62.     Patterson's Early Warning report dated August 2, 2022 revealed that, without Patterson's knowledge or consent, *months prior to sending Patterson the June 7, 2022 statement*, Wells Fargo had in fact processed four ACH transactions using the unauthorized Patterson account. None of these transactions were disclosed or referenced on the June 7, 2022 Wells Fargo account statement for the unauthorized Patterson account, and Patterson had no prior knowledge of these transactions before he received the August 2, 2022 Early Warning report.

63.     Patterson's Early Warning report revealed that, without Mr. Patterson's knowledge or consent, Wells Fargo used the unauthorized Patterson account to move $4,992.00 on March 23, 2022 via ACH from the unauthorized Patterson account to a bank account associated with Peoples' United Bank.

64.     Mr. Patterson does not have any account with Peoples' United Bank and did not authorize any transfer of funds from any account in his name to any account with Peoples' United Bank.

65.     Patterson's August 2, 2022 Early Warning credit report revealed to Patterson for the first time that Wells Fargo processed or attempted to process three more ACH transactions between April and May of 2022 using the unauthorized Patterson account. Each attempted ACH transaction was in the amount of $5,000.00, and all were "returned" due to "insufficient funds." Mr. Patterson did not know about or authorize any of these returned transactions that Wells Fargo reported on its trade line for the unauthorized Patterson account, which are considered derogatory statements that hurt Patterson's credit rating.

66.     Having a transaction reported as returned due to insufficient funds is considered a derogatory mark on the consumer's credit history and can negatively affect the consumer's ability to open accounts and/or obtain credit.

67.     The Wells Fargo trade line for the Patterson account on the August 2, 2022 Patterson Early Warning credit report also does not say that Wells Fargo's unauthorized Patterson account was opened fraudulently or that Patterson was potentially the victim of identity theft.

68.     By the time that Patterson first obtained his Early Warning credit report, August 2, 2022, Wells Fargo had already determined that his account was opened fraudulently, yet Wells Fargo failed to update the trade line for Wells Fargo's unauthorized Patterson account with Early Warning to include any reference to or mention of fraud or identity theft.

69.     Instead, Wells Fargo merely made some adjustments to the trade line for the unauthorized Patterson account, including noting that the account was closed as of July 6, 2022. Other than by calling Wells Fargo on June 17, Patterson did not have any direct role in closing this account. Wells Fargo's trade line on Patterson's August 2, 2022 Early Warning report does not explain why the account remained open for twelve days after Wells Fargo sent Patterson correspondence on June 24, 2022, confirming that Wells Fargo knew that Patterson did not open or have knowledge of the account.

70.     However, despite having acknowledged to Patterson that the account was opened and without his knowledge, Wells Fargo continued to report the existence of the four unauthorized and fraudulent ACH transactions that Wells Fargo processed using the unauthorized Patterson account, three of which were ACH transactions Wells Fargo continued to falsely report as returned due to insufficient funds, which is information that is treated as a derogatory mark on consumers' credit reports.

71.     Patterson's August 2, 2022 Early Warning report indicated that two entities inquired with Early Warning after Wells Fargo opened the unauthorized Patterson account. Among the listed inquiries was an inquiry by Wells Fargo, which occurred the day after it opened the unauthorized Patterson account. The other inquiry disclosed on the August 2, 2022 Early Warning report was made by GIAct Services, which is a company that provides services related to payment and identity fraud prevention. Upon information and belief, neither Wells Fargo nor Early Warning has informed GIAct

CLASS ACTION COMPLAINT

Services that all of the information in the Wells Fargo account trade line on Patterson's Early Warning report was false and/or that the Wells Fargo account had been opened without Patterson's knowledge.

72.     Patterson promptly disputed the Wells Fargo trade line on the Early Warning report in a written dispute he sent to Early Warning on or about August 3, 2022.

73.     Upon information and belief, Early Warning communicated Patterson's dispute to Wells Fargo, which, in response to Early Warning's communication of Patterson's dispute verified that the account was fraudulent.

74.     In response to Patterson's dispute, Early Warning deleted the Wells Fargo trade line and the reference to Wells Fargo's March 11, 2022 inquiry (aka "credit pull") on a "corrected" Early Warning report, which was dated September 1, 2022.

75.     Although Early Warning's deletion of the trade line for the unauthorized Wells Fargo account on Patterson's Early Warning report was proper, Early Warning's deletion of the fact that Wells Fargo obtained Plaintiff's Early Warning credit report on March 11, 2022 was not, as it had the effect of concealing the fact that Wells Fargo had impermissibly obtained access to Plaintiff's Early Warning credit report and the detailed, sensitive PII and PFI it contains.

76.     Early Warning's September 1, 2022 "corrected" report following Patterson's dispute did not merely delete the Wells Fargo trade line and Wells Fargo's prior inquiry: it also revealed that Early Warning received 13 additional formal inquiries from third parties that were not disclosed on Patterson's August 2022 Early Warning credit report.

77.     Based on the publication dates for those inquiries on the September 1, 2022 "corrected" Early Warning report responding to the Patterson dispute, Wells Fargo and Early Warning falsely reported that Patterson had at least one and up to three recent scheduled ACH transactions returned for insufficient funds no fewer than 14 times to no fewer than 5 different third parties.

78.     Mr. Patterson has been injured by Wells Fargo's unauthorized electronic funds transfers via Wells Fargo's unauthorized Patterson account.

CLASS ACTION COMPLAINT

79.     Mr. Patterson has been injured by Defendants' false credit reporting.

80.     Mr. Patterson has been injured by Defendants' theft of his PII and PFI.

81.     Upon information and belief, Wells Fargo furnished, and Early Warning published in response to third party inquiries, false and harmful trade line information regarding one or more unauthorized accounts Wells Fargo opened in the putative class members' names.

82.     Now Plaintiff and the class members must incur the cost of protecting themselves against identity fraud. Defendants should bear that cost.

83.     Mr. Patterson experienced great stress, personal inconvenience, and expenses as a consequence of Wells Fargo's actions as described herein.

84.     Wells Fargo's actions placed Mr. Patterson at risk of prosecution and exposure to criminal liability for money laundering, as Wells Fargo transferred money in Patterson's name to a third party without Patterson's knowledge or consent.

85.     Wells Fargo's actions also placed Mr. Patterson at great risk of false and/or incorrect credit reporting, which affected his credit and financial well-being.  Mr. Patterson is also at great risk of identity theft and/or unauthorized publication and dissemination of his PII.

### *CFPB Complaints Reveal Many Other Victims*

86.     Defendants did not just do this to Mr. Patterson. The complaint database the Consumer Financial Protection Bureau or "CFPB" maintains for consumer complaints reveals more than fifty other consumers with unauthorized accounts Wells Fargo opened in consumers' names through identity fraud - in just March through June of 2022.

87.     Wells Fargo responded to each of the consumer complaints through the CFPB, but Wells Fargo did not comment publicly as to any allegation that it opened any unauthorized account in the name of any of the CFPB complainants. **See Appendix A, list of CFPB complaints about Wells Fargo opening unauthorized consumer banking accounts.**

CLASS ACTION COMPLAINT

88.     Searching for similar complaints filed by consumers with the CFPB alleging similar misconduct by other financial institutions reveals that Wells Fargo has received substantially more complaints on this issue during the same time period than any other major U.S. bank.

### *Wells Fargo's History of Abusing Consumers*

89.     Wells Fargo has a long history of engaging in practices that are harmful to consumers. Specifically, Wells Fargo has entered into a number of consent orders and settlements with the Office of the Comptroller of the Currency (the "OCC") and/or the United States Trustee relating to bankruptcy matters.[2]

90.     In 2015, the OCC found deficiencies in Wells Fargo's internal controls related to the Bank Secrecy Act and Anti-Money Laundering rules in the Wholesale Banking Group. The consent order noted that Wells Fargo had not made acceptable progress toward correcting previously identified problems in this area.

91.     In 2016, Wells Fargo also entered into settlements with the CFPB, OCC, and the City of Los Angeles in the combined amount of $185 million for Wells Fargo's practice of opening unauthorized deposit and credit accounts without the customer's knowledge.  Wells Fargo also entered into a $142 million settlement with account holders regarding this practice.  *See Jabbari v. Farmer*, No. 18-16213, No. 18-16236, No. 18-12684, No. 18-12685, No. 18-16315, No. 18-16317, 2020 WL 4048683 (9th Cir. July 20, 2020) (overruling objections to approval of class action settlement).

92.     In April 2018, Wells Fargo entered into agreements with the OCC and the CFPB totaling $1 billion for Wells Fargo's practices relating to forcing customers to pay for interest rate lock

---

[2] Among other things, this includes: (1) a 2011 consent order with the OCC concerning "robosigning" of affidavits and foreclosing on borrowers without the proper chain of a title; (2) the 2012 National Mortgage Settlement with most of the States regarding various bankruptcy practices; (3) a 2015 amendment to the 2011 Consent Order for continued noncompliance with the 2011 Consent Order; (4) an $81.6 million settlement with the United States Trustee's office for failing to file notices pursuant to Fed. R. Bankr. P. 3002.1 in 2015; (5) a 2016 amended consent order with the OCC fining Wells Fargo $70 million for further violations of bankruptcy law.

CLASS ACTION COMPLAINT

extensions when the bank caused the delays and forcing customers to purchase unnecessary insurance policies when purchasing vehicles with loans from Wells Fargo.  That same year, Wells Fargo refunded millions of dollars in fees for add-on products such as pet insurance and legal services that were placed on customers' accounts without their full understanding.

93.    In December 2018, Wells Fargo agreed to pay $575 million to resolve claims with the 50 states and the District of Columbia relating to Wells Fargo's practice of opening accounts without consumer consent, force-placed collision insurance on auto loans, and excessive fees charged to mortgage borrowers for extending a rate lock.

94.    In February 2021, Wells Fargo agreed to pay $3 billion to resolve its potential civil and criminal liability stemming from Department of Justice allegations that it engaged in a years-long process of pressuring employees to meet unrealistic sales goals that led to the creation of thousands of fake accounts.  In connection with the settlement, Wells Fargo admitted that it collected millions of dollars in fees and interest to which it was not entitled, harmed certain customers' credit, and unlawfully misused customers' personal information.

### *Wells Fargo's and Early Warning Services' Awareness of the Harmfulness and Prevalence of Synthetic Identity Fraud*

95.    Federal banking laws require financial institutions to maintain and follow robust procedures for identifying the identity of prospective bank customers, which are known as "KYC" (know your customer) and "AML" (anti-money laundering) requirements. These requirements are embodied in statutes and other federal rules and regulations.

96.    Banks' and credit reporting agencies' identity verification processes and procedures represent a critical first line of defense against a particularly pervasive form of identity fraud known in the financial services community as "synthetic identity fraud."

97.    Synthetic identity fraud, generally, is the fraudulent use of some of a consumer's true personal identification information in combination with some false personal identification information

17

in order to open financial accounts in the consumer's name without the consumer's knowledge or consent. Typically, synthetic identity fraudsters use these unauthorized accounts for various criminal purposes, including (among other things) money laundering, theft from the victim's legitimate financial accounts, and to open credit accounts in the victim's name, which can be used to make fraudulent purchases without the victim's knowledge or consent.

98.     Early Warning has long been aware of the dangers posed by synthetic identity fraud, and Early Warning's website contains multiple articles about the threat posed by synthetic identity fraud to financial institutions and consumers alike, which Early Warning uses to market its information security and fraud prevention business to financial institutions and other businesses that regularly manage sensitive consumer PII and PFI.

99.     Because it has such detailed personal identification information for practically every American consumer's personal and business banking accounts, Early Warning's identity verification service should easily be able to recognize inconsistencies in PII for a consumer submitted by financial institutions seeking to verify a potential consumer's identity in connection with opening a new account.

100.    Given the false PII Wells Fargo associated with Patterson's and the other putative class members' unauthorized accounts, it was unreasonable per se for Early Warning to "verify" the identities of these victims in response to Wells Fargo's identity verification request to Early Warning in connection with the opening of the unauthorized accounts.

101.    Wells Fargo uses Early Warning as a "third party" identity verification service to create the appearance that it is complying with these KYC and AML requirements. At least with respect to the putative members of this class, neither Wells Fargo nor Early Warning made a meaningful effort to verify the identity of the consumers before Wells Fargo opens consumer banking accounts in their name.

CLASS ACTION COMPLAINT

*How Defendants' Unauthorized Account / Synthetic Identity Fraud*
*Identity Theft Scheme Works (account opening and credit reporting procedures)*

102.    As relevant here, Early Warning falsely verified Plaintiff's identity to Wells Fargo in connection with Wells Fargo's opening of the unauthorized Patterson account, improperly granted Wells Fargo access to Patterson's confidential Early Warning credit file containing his detailed (true) personal and financial information.  Early Warning also reported false transaction and personal identification information regarding Mr. Patterson in connection with the trade line Wells Fargo furnished to Early Warning for the unauthorized Patterson account, which Early Warning published more than a dozen times to various third parties.

103.    Upon information and belief, Wells Fargo and Early Warning failed to follow industry standards for identity verification when Wells Fargo opened the Patterson account, including: (1) failing to use appropriate identity proofing methods, such as behavioral scores and capturing information about the device used during the online or mobile application process that resulted in Wells Fargo's opening of the unauthorized Patterson account; and (2) failing to verify the opening deposit.

104.    The Defendants, Wells Fargo and the company it owns and helped to create, Early Warning, have been working together to falsely verify consumers' identities, opening unauthorized bank accounts in consumers' names using a combination of true and false PII for the consumers, processing financial transactions through these unauthorized accounts, and then furnishing trade line information about these unauthorized accounts and unauthorized transactions to Early Warning, which information Early Warning then publishes to users of Early Warning's specialty credit reporting service.

105.    Because Wells Fargo was permitted to impermissibly obtain Plaintiff's and the putative class members' Early Warning reports, a notation on those reports reflecting that Wells Fargo had made inquiry of Early Warning with respect to the Plaintiff's and putative class members' files lent further

CLASS ACTION COMPLAINT

undue credibility to the veracity of the unauthorized Wells Fargo accounts and the associated PII and banking information Wells Fargo furnished to Early Warning with respect to the unauthorized accounts.

106.    The way Early Warning assists Wells Fargo is twofold: First, Early Warning provides fraudulent identity "verification" services for Wells Fargo when Wells Fargo creates a consumer banking account, giving the account a false veneer of legitimacy. Second, once an unauthorized account has been opened in the consumer victim's name, Early Warning allows Wells Fargo to request and obtain the consumer's detailed confidential personal Early Warning banking credit report.

107.    By obtaining this confidential personal identification and banking information without the consumer's permission or even their knowledge, Wells Fargo is injuring the unwitting consumer and unjustly enriching itself.

### Class Allegations

108.    Defendants have opened unauthorized bank accounts for Plaintiff and the putative class members and processed unauthorized electronic financial transactions, including funds transfers, using those accounts.

109.    Defendants have also knowingly and willfully furnished and published to third parties false and defamatory trade line credit reporting information regarding Plaintiff and the other putative class members. As a result of Defendants' misconduct, Plaintiff and the putative class members have suffered reputation injuries and other actual harms and losses.

110.    Plaintiff is a member of and seeks to represent the following Class:

All persons within the United States who have or had a bank account that was opened by Wells Fargo without their authorization in connection with Defendants' verification of the person's identity based on an "application" that included a combination of some of the person's true and false PII, within the four years prior to the filing of the complaint in this action.

111.    Plaintiff is a member of and seeks to represent the following Subclass:

All persons within the United States who have or had a bank account opened by Wells Fargo that was used by Wells Fargo to process one or more unauthorized electronic funds transfer transactions.

CLASS ACTION COMPLAINT

112.    Plaintiff is a member of and seeks to represent the following additional Subclass:

All persons within the United States whose credit report and/or consumer disclosure from Early Warning was obtained by Wells Fargo without authorization.

113.    Excluded from the Class and Subclasses are: (1) defendant, any entity or division in which defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injury as a result of the facts alleged herein.

114.    Plaintiff brings this lawsuit as a class action on behalf of himself and class members of the proposed class. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

115.    <u>Numerosity</u>: the members of the Class and Subclasses are so numerous that joinder of all members would be unfeasible and impractical. The membership of the entire class is currently unknown to plaintiff at this time; however, given that, on information and belief, Defendants' conduct resulted in thousands of unauthorized bank accounts being opened and thousands of impermissible credit inquiries with respect to each class member across the country during the class period, it is reasonable to presume that the members of the class are so numerous that joinder of all class members is impracticable.

116.    For example, during just the four-month period of March through June of 2022, Wells Fargo was the subject of more than 40 unique consumer complaints filed with the CFPB alleging that Wells Fargo opened an unauthorized bank account in the name of the complaining consumer when the consumer had no pre-existing banking relationship with Wells Fargo at the time the account was opened. The number of CFPB complaints Wells Fargo received with respect to this specific fact pattern far outnumbered the number of similar complaints filed with the CFPB that were lodged against any other financial institution during the same period.

CLASS ACTION COMPLAINT

117.   <u>Commonality</u>: there are common questions of law and fact as to class members that predominate over questions affecting only individual members, including, but not limited to:

- Whether Wells Fargo obtained class members' authorization to use or obtain class members' credit reports from defendant Early Warning;

- Whether Defendant Early Warning had reason to believe that Wells Fargo lacked a legitimate business purpose for obtaining the class members' credit reports at the time that defendant Early Warning provided those reports to Wells Fargo.

- Whether Wells Fargo obtains class members' credit files in connection with any transaction involving the extension of credit to class members;

- Whether within the statutory period, Wells Fargo obtained or used class members' credit reports for a purpose not enumerated by the FCRA 15 U.S.C. § 1681f(b);

- Whether within the statutory period, Early Warning provided class members' credit reports to Wells Fargo for a purpose not enumerated by the FCRA 15 U.S.C. § 1681f(b);

- Whether within the statutory period, Early Warning provided class members' credit reports to Wells Fargo in spite of the fact that the identity verification information associated with the consumers' unauthorized Wells Fargo accounts was materially inconsistent with the identity verification information associated with such consumers' legitimate accounts that were included in Early Warning's files for such consumers.

- Whether Early Warning verified the identity of consumers in response to identity verification information submitted to Wells Fargo in connection with an unauthorized online consumer banking account application to Early Warning by Wells Fargo even though such information was materially inconsistent with the identity verification information associated with such consumers other existing accounts.

- Whether Wells Fargo retained the confidential personal financial information contained in the credit reports it obtained from Early Warning regarding the class members despite having no legitimate business relationship with the class members.

- Whether plaintiffs and class members were damaged thereby, and the extent of damages for such violations; and

- Whether an injunction should issue with respect to Defendants:

     o   Requiring Defendants to:

- delete all unlawfully obtained consumer credit information that each Defendant obtained as a consequence of Wells Fargo's opening of unauthorized consumer bank accounts for Plaintiff and the class members;

- jointly and severally ensure that the Plaintiff and class members' credit reports do not contain any information pertaining to any unauthorized account(s) Wells Fargo opened in Plaintiff's or any class member's name;

- each separately communicate to Plaintiff and each of the class members the name and contact information belonging to every person or entity to whom the Defendants provided information regarding or related to the unauthorized account Wells Fargo opened in the Plaintiff's or class member's name, as well as the date(s) on which each Defendant provided the relevant information, and the information the Defendant provided to such person or entity;

- each separately inform every person or entity to whom the Defendants provided information regarding or related to each unauthorized account Wells Fargo opened in Plaintiff's or any other class member's name that (a) the account (which shall be identified specifically) was not authorized or opened by the Plaintiff or class member in whose name it was opened; (b) the opening of the account was the result of a fraud that Defendants failed to detect and prevent (identifying the specific fraudulent information that Defendants received regarding Plaintiff and other class member in connection with the unauthorized account application), and confirming that, as far as Defendants are aware, Plaintiff and each of the class members had no knowledge of and took no part in the fraudulent opening of the account, and

o Prohibiting Defendants from:

- opening any new consumer checking account for any individual who is not a pre-existing banking customer of the Defendant until this Court certifies that Defendants have developed and implemented identity verification processes and procedures that would have prevented the unauthorized opening of Plaintiff's and the class members' accounts based on the information Defendants collected regarding Plaintiff and the class members prior to opening the Plaintiff's and class members' unauthorized accounts.

118. <u>Typicality</u>: Plaintiff, a natural person, is asserting claims that are typical of the Class and Subclasses, as Plaintiff (i) had a bank account opened by Wells Fargo without authorization in connection with Defendants' purported verification of Plaintiff's identity involving some of the Plaintiff's true and false PII, (ii) the bank account was used to make several unauthorized electronic

CLASS ACTION COMPLAINT

funds transfers by Wells Fargo, and (iii) Plaintiff's PFI was obtained by Wells Fargo from Early Warning without Plaintiff's authorization.

119.     Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class and Subclasses. Plaintiff has retained counsel experienced in handling individual and class action claims involving consumer rights similar to those implicated here.

120.     Valuing Plaintiff's / the class members' claims mechanically is feasible by reference to applicable credit market opportunity, available equity (unencumbered property value minus loan balance), cost of credit protection measures (in time and expense), correction of prior false reporting to third parties, and 'market' value of the correct personal identification information that Wells Fargo included in the unauthorized account application.

121.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with state and federal law. The interest of Class members in individually controlling the prosecution of separate claims against the Defendants is small because the maximum statutory damages in an individual action are minimal.

122.     Defendants have acted and continue to act on grounds generally applicable to the Class, thereby making appropriate, final injunctive relief and corresponding declaratory relief, with respect to the Class as a whole.

123.     Plaintiff reserves the right to redefine the class and subclass as well as assert additional sub-classes as appropriate based on discovery and specific theories of liability.

//

//

//

24

CLASS ACTION COMPLAINT

## VI. CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE RACKETEER INFLUENCED
### AND CORRUPT ORGANIZATIONS ACT
### (All Defendants)

124.    §1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

125.    At all relevant times, each Defendant is and has been a "person" within the meaning of 18 U.S.C. §1961(3), because they are capable of holding, and do hold, "a legal or beneficial interest in property."

126.    As set forth in the allegations of this complaint, Defendants conducted the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

127.    Plaintiff is a "person" for purposes of 18 U.S.C. §1961(3), and has standing to sue under 18 U.S.C. § 1964(c), as Plaintiff was and is injured in his business and/or property by reason of Defendants' RICO Act violations.

**A.    The Enterprise**

128.    §1961(4) of the RICO Act defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

129.    Based on the Plaintiff's current knowledge, information, and belief, the enterprise in this case constitutes an association in fact enterprise, referred to herein as the "Synthetic Identity Fraud Enterprise," consisting of:

- WFC

- WFB

CLASS ACTION COMPLAINT

- Early Warning

- Early Warning's other non-defendant owner banks,

- Early Warning's 2,500+ member financial institutions that furnish information to and obtain consumer reports from Early Warning,

- Other vendors and third parties, that created, maintained, used, and implemented the systems and processes used by members of the enterprise, including Defendants, to establish unauthorized consumer bank accounts, unlawfully disclose, publish, and/or obtain consumers' confidential personal identification information and consumers' detailed personal and business banking information, and/or to facilitate, transfer, receive, or benefit from unauthorized electronic funds transfers using Plaintiff's and the putative class members' unauthorized bank accounts.

130.    The Synthetic Identity Fraud Enterprise is an ongoing organization that engages in and whose activities affect interstate commerce.

131.    The members of the Synthetic Identity Fraud Enterprise function as a continuing unit and share the common purpose of maximizing their profits by establishing and processing payments using unauthorized consumer bank accounts, using the unauthorized consumer bank accounts as a proxy to gain access to the consumer's true and correct personal identification information and detailed personal and business banking history information, and to disseminate false, deceptive, and defamatory information about consumers through the furnishing and publication of false information regarding unauthorized consumer bank accounts opened by Wells Fargo in consumers' names, including false identification information and false information about account transactions on the unauthorized consumer accounts.

CLASS ACTION COMPLAINT

132.    The Synthetic Identify Fraud Enterprise is linked systematically through contractual relationships, ownership, financial ties, parent/subsidiary relationships, and ongoing commercial relationships.

133.    WFB is a partial owner of and has contracted with Early Warning to provide it with fraudulent and/or recklessly unreliable identity verification services, which Wells Fargo uses when opening unauthorized consumer bank account based on synthetic identity fraud (i.e. a mix of true and false personal identification information).

134.    WFB, as a member of Early Warning's network of 2,500+ financial institutions across the United States, has contracted with Early Warning to furnish and obtain consumer file information regarding consumers' personal and business bank accounts, including unauthorized consumer banking accounts Wells Fargo opened in Plaintiff's and the other class members' names.

135.    While all Enterprise members participate in and are part of the Synthetic Identity Fraud Enterprise, they each exist as a separate and distinct entity apart from the Enterprise.

136.    WFC is a diversified financial services company organized under the laws of Delaware and registered as a financial holding company and a bank holding company under the Bank Holding Company Act of 1956, as amended.

137.    WFC provides banking, investment, and mortgage products and services, as well as consumer and commercial finance through banking locations, ATMs, the internet, and mobile banking.

138.    WFC conducts substantially all of its operations through its subsidiaries, including but not limited to Wells Fargo Bank, although WFC is a separate and distinct legal entity from its subsidiaries, including Wells Fargo Bank.

139.    A significant source of the funds WFC reports as revenue and uses to pay dividends on its common and preferred stock and debt service on its debt is dividends from WFC's subsidiaries, including dividends from Wells Fargo Bank generated by the Synthetic Identity Fraud Enterprise.

CLASS ACTION COMPLAINT

140.    WFC uses funds it obtains from Wells Fargo Bank, including funds generated in connection with the Synthetic Identity Fraud Enterprise, to satisfy WFC's financial obligations, including payments of principal and interest on WFC's debt.

141.    Together WFC, WFB, and Early Warning control, operate, and direct the affairs of the Synthetic Identity Fraud Enterprise  by, among other things, working together to falsely "verify" false consumer identity information in connection with opening unauthorized consumer banking accounts, and then they work together to exchange, furnish, and publish false consumer banking account and history information via Early Warning's consumer reporting service in order to obtain the consumer's valuable true and correct personal identification and banking history information, as well as to legitimize the false information Wells Fargo reports regarding the consumer's identity and banking history for the unauthorized account Wells Fargo established in the injured consumer's name.

142.    The Synthetic Identity Fraud Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity.

**B.    Defendants committed numerous predicate acts constituting racketeering activity for purposes of RICO liability**

143.    §1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). As set forth herein, Defendants have engaged and continue to engage in conduct violating each of these laws in order to effectuate their fraudulent scheme.

144.    For purpose of executing and or attempting to execute the above-described scheme to defraud or obtain money by means of false pretenses, representations or promises, Defendants placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carriers, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to serving through the mail correspondence with victims of Defendants' Synthetic Identity Fraud Enterprise with

28

unauthorized Wells Fargo accounts, including statements and other written and mailed correspondence to Plaintiff and the putative class members regarding these unauthorized accounts.

145.    The matter and things Defendants sent via the Postal Service, commercial carrier, wire, or other interstate electronic media included, inter alia: false trade line information furnished by Wells Fargo to Early Warning regarding the unauthorized consumer bank accounts, which Early Warning then published in response to ordinary course inquiries by third party financial services entities regarding Plaintiff's credit file pertaining to his personal and business banking history, as well as false, deceptive, and misleading communications regarding the source of the unauthorized account Wells Fargo established in Plaintiff's and the class members' names, and false information regarding the identity of parties to whom Early Warning provided false information regarding Wells Fargo's unauthorized bank account in Plaintiff's and the putative class members' names, and false and misleading information regarding the identity of parties who made inquiries regarding Plaintiff to Early Warning and the frequency with which Early Warning received and responded to such inquiries (Early Warning actually published Plaintiff's false credit report to third parties far more often than it initially admitted).

146.    Other matter and things Defendants sent through or received via the Postal Service, commercial carrier, wire, or other interstate electronic media include information or communications in furtherance of or necessary to effectuate the scheme, including (without limitation) Wells Fargo's furnishing and Early Warning's publication of false credit reporting trade line information to third parties in response to inquiries, misrepresenting the origin, status, reasons for making changes to, and validity of the unauthorized accounts in communications with Plaintiff and the putative class members and others.

147.    Defendants' misrepresentations, acts of concealment, and failures to disclose were knowing and intentional and were made for purposes of deceiving Plaintiff and the putative class members, other users of Early Warning's consumer banking credit reporting and identity verification

CLASS ACTION COMPLAINT

service and/or the recipients or intended recipients of unauthorized financial transactions processed by Wells Fargo using Plaintiff's and/or the class members' unauthorized accounts.

148.    For example, Wells Fargo failed to promptly send a monthly checking account statement to Plaintiff until nearly three months after opening the unauthorized account in Patterson's name, and Wells Fargo failed to include the four ACH transactions that Wells Fargo processed using the unauthorized Patterson account during the first (approximately) month and a half that the account was open, thereby leaving Mr. Patterson unaware that there had been any transactions on the account, much less than the prior transactions included three attempted $5,000 ACH transactions that Wells Fargo and Early Warning reported to third parties as having been returned due to insufficient funds.

149.    Additionally, both Early Warning and Wells Fargo's communications to Mr. Patterson intimated that he was a victim of some other party's identity fraud and directed him to take action to mitigate the harm caused by this identity fraud, when in fact Wells Fargo and Early Warning were both participating in the fraud, hiding the unauthorized transactions on the account, and failing and/or refusing to take action to correct their own misconduct in falsely verifying Patterson's identity, opening the unauthorized Patterson account, without a permissible purpose providing and obtaining Patterson's confidential Early Warning banking consumer credit file information containing Patterson's correct detailed personal identification, and his personal and business banking information going back for years, and actively furnishing and publishing false personal identity and banking/transaction information about Patterson in connection with the trade line Wells Fargo furnished for the unauthorized Patterson account.

150.    Because this is a class action, and there were numerous acts of mail and wire fraud that were used to carry out the scheme, it would be impracticable for Plaintiff to plead all details of the scheme with particularity. Therefore, Plaintiff cannot plead the precise dates of all of Defendants' use of the U.S. Mail and interstate wire services, and corresponding acts of mail and wire fraud, as this information cannot be alleged without access to Defendants' records.

CLASS ACTION COMPLAINT

151.     Defendants either knew or recklessly disregarded the fact that their misrepresentations and omissions regarding Plaintiff's and the putative class members' unauthorized bank accounts were material and that the users of Early Warning's credit reporting service and others would rely and in fact did rely on their false belief in the veracity and integrity of the false information Wells Fargo furnished to Early Warning, which Early Warning then published, with both Wells Fargo and Early Warning intending that the users of the Early Warning report that contained such information would act in reliance thereon.

## C.     Pattern of racketeering activity

152.     As set forth herein, Defendants have engaged in a pattern of racketeering activity, as defined by 18 U.S.C. §1961(5), by committing at least two acts of racketeering activity, i.e. indicate violations of 18 U.S.C. §§ 1341 and 1343 as described above, within the past four years.

153.     The Wells Fargo Defendants have established a long track record of racketeering activity consistent with their conduct in this case, having been reprimanded repeatedly for taking unauthorized harmful action against consumers, including, inter alia, purchasing car insurance for consumers who did not need or request it, opening unauthorized consumer credit and other accounts for millions consumers in connection with practices that have come to be known as the Wells Fargo's consumer sales practices scandal, imposing unwanted mortgage modifications on consumers in bankruptcy and representing that the unwanted modifications were in fact requested by the consumers, and imposing CARES Act forbearances on consumers' mortgage loans without their prior consent and then representing falsely to the consumers and others that the consumers in fact "wanted" or requested the forbearance, among other things. This new approach to an old model is simply Wells Fargo's most recent iteration of its pattern of racketeering activity (in the form of consumer fraud) by Wells Fargo, which it has executed with the assistance and participation of Early Warning and other participants in the Synthetic Identity Fraud Enterprise described herein.

CLASS ACTION COMPLAINT

154.    Each of the Defendants has committed numerous acts of racketeering activity. Racketeering activities include delivering false and misleading information to consumers via mail and wire, false and misleading communications to third parties, including the users of Early Warning's credit reporting services with respect to Plaintiff and the putative class members, upon information and belief, charging and collecting wire transfer, ACH, and other fees on unauthorized transactions appearing on Plaintiff's and the putative class members' credit reports, and disseminating/publishing as true and correct, false identification information regarding Plaintiff and the putative class members in connection with the trade lines furnished by Wells Fargo to Early Warning and subsequently published by Early Warning in response to third party inquiries, as well as by facilitating and effectuating identity theft by Wells Fargo against Plaintiff and the putative class members, insofar as Early Warning published to Wells Fargo, and Wells Fargo requested and accepted, Plaintiff's truthful personal identification and banking information without a legitimate purpose.

155.    Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiff and the putative class members.

156.    The multiple acts of racketeering activity that Defendants committed were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5). Defendants continue to profit from these actions.

157.    As a direct and proximate result, Plaintiff and the putative class members have been injured in their business or property or both by Defendants' predicate acts, which make up a portion of the Defendants' patterns racketeering activity.

158.    Plaintiffs were injured by Defendants material omissions of fact and fraudulent placement of their loans into forbearance status, including credit damage, identity theft, reputational

CLASS ACTION COMPLAINT

harm, and other pecuniary damages and general damages, as well as all other injuries and harms described herein.

159.   As a result of Defendants violations of RICO, Plaintiffs are entitled to recover and hereby seek treble actual damages and their attorneys' fees and expenses of this suit.

**COUNT II**
**VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT**
**(Defendant Wells Fargo Bank)**

160.   Plaintiff and the putative class members are natural persons and therefore qualify as consumers for purposes of the EFTA.

161.   WFB is a financial institution for purposes of the EFTA because it is a National Banking Association that directly or indirectly holds Plaintiff's and the putative class members' unauthorized consumer accounts.

162.   The Plaintiff's and putative class members' unauthorized accounts are consumer accounts for purposes of the EFTA because they are demand deposit (checking), savings, or other consumer asset account (other than an occasional or incidental credit balance in a credit plan) held directly or indirectly by Defendant Wells Fargo Bank, which were ostensibly established primarily for personal, family, or household purposes.

163.   The transfer of funds by Wells Fargo from Plaintiff's and putative class members' unauthorized consumer accounts constitute electronic fund transfers for purposes of the EFTA because they were initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account.

164.   The transfer of funds by Wells Fargo from Plaintiff's and the putative class members' unauthorized consumer accounts constitutes unauthorized electronic fund transfers because they were electronic fund transfers initiated by a person (or persons) other than the consumer without actual authority to initiate such transfer and from which the consumers received no benefit.

33

165.    Neither Plaintiff nor the putative class members furnished the person or persons who initiated the unauthorized electronic fund transfers with a means of accessing the consumer's account, nor were these unauthorized electronic fund transfers initiated by Plaintiff or the putative class members or any person acting in concert with the consumer with fraudulent intent.

166.    Wells Fargo Bank's unauthorized electronic fund transfers from Plaintiff's and the putative class members' unauthorized consumer accounts were not the result of an error committed by Wells Fargo Bank.

167.    Defendant Wells Fargo Bank failed to make available to Plaintiff or the other putative class members written documentation of the unauthorized electronic fund transfers at the time such transfers were initiated, in violation of §1693d(a) of the EFTA.

168.    Defendant Wells Fargo Bank failed to provide a periodic statement to Plaintiff or the putative class members for the monthly period in which the unauthorized electronic fund transfers occurred, in violation of §1693d(c) of the EFTA.

169.    Pursuant to §1693m(a) of the EFTA, Plaintiff and the putative class members are entitled to recover damages from Defendant Wells Fargo Bank for its violations of the EFTA, including actual damages resulting from Wells Fargo Bank's failure to comply with the EFTA and such additional statutory damages authorized by the EFTA, as well as a reasonable attorney's fee and costs of the litigation in an amount determined by the Court.

## COUNT III
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (Defendant Wells Fargo Bank)

170.    Plaintiff repeats and realleges the allegations in this complaint.

171.    Plaintiff and each putative class member is a "consumer," as that term is defined by the FCRA.

172.    Wells Fargo is a "person" and a "user" of consumer credit and other financial information as those terms are defined by the FCRA.

34

173.    The Early Warning report obtained by Wells Fargo is a "consumer report" as defined by the FCRA.

174.    As alleged above, Wells Fargo willfully accessed portions or all of Plaintiff's consumer credit reports under false pretenses or knowingly without a permissible purpose and has failed to comply with 15 U.S.C. § 1681b(f).

175.    In the alternative only, Wells Fargo negligently accessed portions or all of Plaintiff's consumer credit reports without a permissible purpose and has failed to comply with 15 U.S.C. § 1681b(f).

176.    Plaintiff was not a Wells Fargo customer and did not authorize Wells Fargo to access his Early Warning report.  Wells Fargo's impermissible access to and use of Plaintiff's private financial information held in his Early Warning report, when Wells Fargo had knowledge that it had no legally permissible purpose to access and use that information, constitutes knowing and willful violations of the FCRA under 15 U.S.C. § 1681n, or alternatively and at a minimum, negligent violations under 15 U.S.C. § 1681o.

177.    Pursuant to 15 U.S.C. §§ 1681n and/or 1681o, Wells Fargo is liable to Plaintiff for his actual or statutory damages, attorneys' fees and costs, and punitive damages.

178.    Plaintiff has suffered actual damages, and has suffered physically, mentally, and emotionally as a result of Wells Fargo's willful violations of the Fair Credit Reporting Act.

179.    Specifically, Plaintiff's personal identifiable information has been stolen and Plaintiff's privacy has been invaded.  Further, as a result of an unauthorized pull, Wells Fargo supplied false information to Early Warning that caused Plaintiff reputational damage.

180.    Plaintiff has experienced significant amount of stress and frustration as a result of the unauthorized pull of his Early Warning report by Wells Fargo.

181.    Plaintiff has also been damaged in that he has incurred and continues to incur attorneys' fees in connection with Wells Fargo's unauthorized credit pulls.

CLASS ACTION COMPLAINT

182.    The injuries suffered by Plaintiff because of Wells Fargo's impermissible access to and use of Plaintiff's Early Warning report were attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to punitive damages under 15 U.S.C. § 1681n(a)(2).

## COUNT IV
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (Defendant Early Warning)

183.    Plaintiff repeats and realleges the allegations in this complaint.

184.    Plaintiff and each class member is a "consumer," as that term is defined by the FCRA.

185.    Early Warning is a "Consumer reporting agency" as that term is defined by the FCRA.

186.    As alleged above, Early Warning provided Wells Fargo a credit report despite the fact that Plaintiff and the other class members did not authorize Early Warning to provide the report and Wells Fargo had no permissible purpose for obtaining the report.

187.    The majority of the personal identification information provided by Wells Fargo did not match the personal identification information Early Warning had on file for Plaintiff, yet Early Warning still provided Plaintiff's and other class members' Early Warning comprehensive file disclosure (Early Warning credit report) to Wells Fargo.

188.    Early Warning has failed to comply with the requirements of 15 U.S.C. § 1681b(c).

189.    Plaintiff was not a Wells Fargo customer and did not authorize Early Warning to publish his report to Wells Fargo and there was no permissible reason for Early Warning to provide Wells Fargo with Plaintiff's report.  Early Warning's unauthorized publication to Wells Fargo of Plaintiff's report constitutes knowing and willful violations of the FCRA under 15 U.S.C. § 1681n, or alternatively and at a minimum, negligent violations under 15 U.S.C. § 1681o.

190.    Pursuant to 15 U.S.C. §§ 1681n and/or 1681o, Early Warning is liable to Plaintiff for his actual or statutory damages, attorneys' fees and costs, and punitive damages.

191.    Plaintiff has suffered actual damages, and has suffered physically, mentally, and emotionally as a result of Early Warning's willful violations of the Fair Credit Reporting Act.

CLASS ACTION COMPLAINT

192.    Specifically, Plaintiff's personal identifiable information has been stolen and Plaintiff's privacy has been invaded.  Further, as a result of the unauthorized publication, Wells Fargo provided false information about Plaintiff that appeared on his report that caused him reputational damage.

193.    Plaintiff has also experienced significant amount of stress and frustration as a result of the unauthorized publication.

194.    Plaintiff has also been damaged in that he has incurred and continues to incur attorneys' fees in connection with Early Warning's unauthorized publication of Plaintiff's credit report to Wells Fargo.

195.    The injuries suffered by Plaintiff because of Early Warning's unauthorized publication of his credit report to Wells Fargo were attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to punitive damages under 15 U.S.C. § 1681n(a)(2).

## COUNT V
### NEGLIGENCE / GROSS NEGLIGENCE
### (All Defendants)

196.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

197.    Wells Fargo owed Plaintiff and the putative class members a duty to prevent the opening of unauthorized accounts in their names.

198.    Wells Fargo owed Plaintiff and the putative class members a duty to identify, investigate, and close any unauthorized accounts it opened in Plaintiff's and the putative class members' names upon learning that the personal identification information Wells Fargo associated with these unauthorized accounts was contrary to and incompatible with the personal identification information provided on Early Warning's consumer reports' trade lines for the other financial institutions where Plaintiff and the putative class members had pre-existing accounts.

199.    Wells Fargo owed Plaintiff and the putative class members a duty to prevent the processing of unauthorized electronic funds transfer transactions in Plaintiff's and the putative class members' names.

200.    Wells Fargo owed Plaintiff and the putative class members a duty to inform Plaintiff and the putative class members when it became aware that it had opened bank accounts in their names using false personal identification information.

201.    Wells Fargo owed Plaintiff and the putative class members a duty to inform Plaintiff and the putative class members that it processed electronic funds transfers using the unauthorized accounts it opened in their names.

202.    Early Warning owed Plaintiff and the putative class members a duty to not falsely verify Plaintiff's and the putative class members' identities in response to Wells Fargo's consumer identity verification request based on false PII for the Plaintiff and putative class members, which was inconsistent with the PII Early Warning associated with the Plaintiff and putative class members' pre-existing bank accounts.

203.    Early Warning owed Plaintiff and the putative class members a duty to inform Wells Fargo that the personal identification information Wells Fargo associated with the Plaintiff's and putative class members' accounts was false, incompatible with, and/or contrary to the personal identification information Early Warning associated with Plaintiff's and the putative class members' existing bank accounts.

204.    Wells Fargo and Early Warning breached these duties.

205.    Wells Fargo breached its duty to prevent the opening of unauthorized accounts in Plaintiff's and the other class members' names by opening the unauthorized accounts described herein.

206.    Wells Fargo breached its duty to identify, investigate, and close any unauthorized accounts it opened in Plaintiff's and the putative class members' names upon learning that the personal identification information Wells Fargo associated with these unauthorized accounts was contrary to

and incompatible with the personal identification information provided on Early Warning's consumer reports' trade lines for the other financial institutions where Plaintiff and the putative class members had pre-existing accounts when it failed to take these actions after obtaining Plaintiff's and the putative class members' Early Warning credit reports upon opening the unauthorized bank accounts in Plaintiff's and the putative class members' names.

207.   As set forth herein, Wells Fargo breached its duty to Plaintiff and the putative class members to prevent the processing of unauthorized electronic funds transfer transactions in Plaintiff's and the putative class members' names.

208.   Wells Fargo breached its duty to inform Plaintiff and the putative class members that it had opened fraudulent bank accounts in their names when it became aware that it had opened bank accounts in their names using false personal identification information.

209.   Wells Fargo breached its duty to inform Plaintiff and the putative class members that it processed electronic funds transfers using the unauthorized accounts it opened in their names.

210.   Early Warning breached its duty to Plaintiff and the putative class members to not falsely verify Plaintiff's and the putative class members' identities in response to Wells Fargo's consumer identity verification request that was based on false PII for the Plaintiff and putative class members, which was inconsistent with the PII Early Warning associated with the Plaintiff and putative class members' pre-existing bank accounts.

211.   Upon information and belief, Early Warning breached its duty to Plaintiff and the putative class members to inform Wells Fargo that the personal identification information Wells Fargo associated with the Plaintiff's and putative class members' accounts was false, incompatible with, and/or contrary to the personal identification information Early Warning associated with Plaintiff's and the putative class members' existing bank accounts.

212.   At best, each of the Defendants' breaches of these duties was a result of the Defendants' failure to use ordinary care.

CLASS ACTION COMPLAINT

213.     Given the extreme importance and sensitivity of the personal identification and personal financial information that was at issue in connection with the Defendants' opening of these accounts and identity verification procedures, and given the obvious inaccuracies in the personal identification information that Wells Fargo associated with Plaintiff's and the putative class members' unauthorized accounts, Defendants' breach of the foregoing duties represented a wanton failure by Defendants to use even slight care. Had Defendants compared the personal identification information they associated with the unauthorized accounts against the personal identification information associated with the Plaintiff's and class members' existing bank accounts, the discrepancies would have been obvious and would have clearly established that the unauthorized Wells Fargo accounts were the product of synthetic identity fraud, which both Wells Fargo and Early Warning knew and actively understood to be a major security threat at the time that they verified the identities of the consumers associated with these unauthorized accounts. Wells Fargo's and Early Warning's failure to identify and address these material discrepancies in the personal identification information associated with Plaintiff's and the putative class members' accounts represents Defendants' intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another.

214.     As a result of Defendants' breaches of these duties, Plaintiff and the putative class members have been injured, suffering reputational harm, identity theft, emotional distress, frustration, and anxiety over the potential consequences of having their sensitive personal identification information and personal financial information disclosed, revealed, and/or stolen without their consent.

215.     As a result of Defendants' breaches of these duties, Plaintiff and the putative class members have been injured, suffering reputational harm, identity theft, emotional distress, frustration, and anxiety over the potential consequences of Wells Fargo processing unauthorized electronic funds transfers in their names using these unauthorized consumer checking accounts.

216.     But for Defendants' breaches of these duties, Plaintiff and the putative class members would not have suffered these harms or incurred these losses.

CLASS ACTION COMPLAINT

217.   Because Defendants' breaches of these duties were wanton and demonstrated a reckless disregard for obvious likelihood of harms to Plaintiff and the putative class members, which harms Plaintiff and the putative class members in fact experienced, Plaintiff and the putative class members are entitled to recover punitive damages from Defendants for their gross negligence.

218.   Plaintiffs have incurred and are incurring reasonable attorneys' fees and expenses as a consequence of Defendants' negligence and/or gross negligence. Therefore, due to their negligence and/or gross negligence, Defendants are also liable to Plaintiff and the putative class members for Plaintiff's and the putative class members' reasonable attorneys' fees and expenses associated with bringing this action.

## VII.  REQUEST FOR DECLARATORY RELIEF

219.   Plaintiff repeats and realleges the allegations in this complaint.

220.   As outlined in the preceding counts and the preceding factual allegations, Defendants have violated RICO, the FCRA, and the EFTA.

221.   Plaintiff seeks a declaration that Defendants' conduct as described herein violates RICO, the FCRA, and the EFTA.

## VIII.  REQUEST FOR INJUNCTIVE RELIEF

222.   Plaintiff repeats and realleges the allegations in this complaint.

223.   To the extent monetary remedies are in some ways inherently inadequate in circumstances involving identity theft, and to the extent that Wells Fargo continues to retain and have access to the use of Plaintiff's and the putative class members' personal identification and banking history information, Wells Fargo should also be enjoined from the use, publication, transfer, or sale of any personal or other information regarding Plaintiff or any putative class member for any purpose whatsoever and instructed to completely and permanently delete and destroy all electronic and physical copies of Plaintiff's and the putative class members' personal identification and banking information, and to notify every entity that made inquiry to Early Warning regarding Plaintiff or any class member

at a time when Early Warning included trade line information Wells Fargo furnished regarding an unauthorized Wells Fargo account opened by Wells Fargo as a result of synthetic identity fraud, that all of the information Wells Fargo furnished to and published by Early Warning to such inquiring party regarding Wells Fargo's unauthorized account in the name of Plaintiff or any putative class member was false.

## IX. PRAYER FOR RELIEF

Wherefore, Plaintiff, on his own behalf and on behalf of the putative class members prays that the Court grant Plaintiff the following relief against Defendants and each of them:

- that this action be certified as a class action;
- that Plaintiff be appointed as the representative of the Class and Subclasses;
- that Plaintiff's attorneys be appointed Class Counsel;
- actual damages
- statutory damages;
- punitive damages;
- declaratory relief;
- injunctive relief;
- costs of suit;
- reasonable attorneys' fees;
- and all such other and further relief as the Court deems just and proper in light of Defendants' misconduct and Plaintiff's and the putative class members' injuries alleged herein.

## X. TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to and demands a trial by jury.

CLASS ACTION COMPLAINT

Respectfully submitted,

*/s/ Abbas Kazerounian, Esq.*
Abbas Kazerounian, Esq. (SBN: 249203)
KAZEROUNI LAW GROUP, APC
245 Fischer Ave, Suite D1
Costa Mesa, CA 92626
ak@kazlg.com
(800) 400-6808; Fax 1-800-520-5523

*/s/ Theodore ("Thad") O. Bartholow, III*
Theodore ("Thad") O. Bartholow III
Texas State Bar No. 24062602
(*Pro Hac Vice forthcoming*)
KELLETT & BARTHOLOW PLLC
11300 N. Central Expressway, Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
thad@kblawtx.com

*Attorneys for Plaintiff Bernard J. Patterson*

CLASS ACTION COMPLAINT