**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN: 249203)
ak@kazlg.com
Gil Melili, Esq. (SBN: 337116)
gil@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone:     (800) 400-6808
Facsimile:     (800) 520-5523

**KELLETT & BARTHOLOW PLLC**
Theodore O. Bartholow, III (*pro hac vice*)
11300 N. Central Expy., Suite 301
Dallas, TX 75243
thad@kblawtx.com
(214) 696-9000; Fax (214) 696-9001

[Additional Counsel on Signature Line]

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARD J. PATTERSON; JOSHUA P. ADAMS; LINDA G. JORDAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & CO.; WELLS FARGO BANK, N.A.; EARLY WARNING SERVICES, LLC; LEXISNEXIS RISK SOLUTIONS, INC.,<br><br>Defendants. | Case No.: 3:23-cv-03858-TLT<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S MOTION TO DISMISS**<br><br>**Hearing Date**: October 29, 2024<br>**Time**: 2:00 p.m.<br>**Courtroom**: 9, 19th Floor<br>**Judge**: Hon. Trina L. Thompson |

Plaintiffs Bernard J. Patterson ("Patterson"), Joshua P. Adams ("Adams"), and Linda G. Jordan ("Jordan") (collectively, the "Plaintiffs") hereby submit their Response in Opposition to Defendants Wells Fargo & Co. and Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiffs' Second Amended Complaint. For the reasons stated below, the Court should deny Wells Fargo & Co. and Wells Fargo Bank, N.A.'s Motion to Dismiss. ECF No. 97.

## I.  INTRODUCTION

In the Order granting Wells Fargo's motion to dismiss the Plaintiffs' First Amended Complaint's ("FAC") Fair Credit Reporting Act (FCRA) §1681b count and its count under the California Consumer Credit Reporting Agencies Act's (CCRAA) analogous provisions, the Court held that dismissal of these claims, as pleaded in the FAC, was proper because Plaintiffs' FAC failed to refute or negate Wells Fargo's assertion that it had a permissible purpose – identity verification in connection with account opening – for obtaining Plaintffs' Early Warning Services ("EWS") consumer files, noting also that Plaintiffs' FAC failed to allege facts suggesting that Wells Fargo was aware of discrepancies between the fraudulent account applicants' false personal identification information (PII) and the Plaintiffs' actual personal identification information before it obtained the EWS reports. ECF No. 90 at 7-8. The amended allegations in Plaintiffs' Second Amended Complaint ("SAC"), ECF No. 93, address these issues by clarifying that Wells Fargo knew the PII in the fraudulent account applications was suspect before opening the accounts and before obtaining Plaintiffs' EWS consumer reports, and therefore dismissal of the SAC with respect to Plaintiffs' FCRA and CCRAA unauthorized credit pull causes of action against Wells Fargo is no longer warranted.

Wells Fargo's motion to dismiss the SAC also reprises its other prior arguments for dismissal of the Plaintiffs' FCRA and CCRAA claims in the FAC, which are no more meritorious with respect to the SAC than they were with respect to the FAC.

## II.  RELEVANT FACTUAL BACKGROUND

In the SAC, Plaintiffs allege that Wells Fargo had no permissible purpose to obtain their EWS credit reports. SAC, at ¶¶ 50, 150, 182-184, 186. Plaintiffs allege that none of them "applied

for, opened, and/or held an account with Wells Fargo" (SAC, at ¶¶ 3-5, 90, 105; *see also id.* at ¶¶ 45-47 [Patterson]) and none of them provided Wells Fargo with their PII (*id.* at ¶¶ 45, 103, 105). The SAC alleges that Wells Fargo knew the PII associated with its fraudulent accounts in Plaintiffs' names did not match Plaintiffs' correct PII, which it obtained from LNRS before accessing Plaintiffs' EWS reports, SAC at ¶¶ 26, 41, 42, 48, 50, and Wells Fargo did not in fact use the EWS reports for identity verification purposes, thus expressly negating Wells Fargo's claimed permissible purpose. SAC, ¶¶ 1, 41, 42, 48, 50. Wells Fargo used false PII to obtain their respective credit reports.[1] With this inconsistent and inaccurate PII, Wells Fargo obtained Plaintiffs' credit reports and opened consumer checking accounts in their names, despite being on notice of the various inaccuracies in the PII associated with the fraudulent accounts as alleged in the SAC.

Based on information from former-defendant LNRS that Plaintiffs learned after filing the FAC, the SAC now clarifies and clearly alleges that Wells Fargo obtained Plaintiffs' correct PII from LNRS as part of Wells Fargo's purported "identity verification" procedures before opening the fraudulent accounts in Plaintiffs' names. Then, without further investigation of the material discrepancies between the PII in the fraudulent account applications and the PII for Plaintiffs reported by LNRS, Wells Fargo proceeded to open the fraudulent bank accounts in Plaintiffs' names. Next, Wells Fargo requested and obtained Plaintiffs' EWS consumer files, which included Plaintiffs' personal identification information associated with their legitimate accounts, which matched the information in LNRS's reports and was inconsistent with the PII for Plaintiffs that Wells Fargo associated with the fraudulent accounts. Despite having notice of these conflicts between the false PII associated with the fraudulent accounts and Plaintiffs' correct PII reflected in both LNRS and EWS's records, Wells Fargo conducted no further investigation regarding the fraudulent accounts upon receiving Plaintiffs' EWS reports. Rather, in spite of having obtained all

---

[1] *Id.* at ¶¶ 25-29, 34. For instance, a false birthday, telephone number, driver's license state, driver's license number, driver's license expiration date, and email address was connected with the unauthorized Wells Fargo account that was opened in Patterson's name. *Id.* at ¶ 40. The only information that was correct was Patterson's full name, address, and social security number. *Id.* Similarly, Adams's telephone number, email address, and driver's license state, number and expiration date were all incorrect. *Id.* at ¶ 99. The only PII that was correct was Adams's name, residential address, and social security number. *Id.*

of this clearly contradictory information about the false PII associated with the fraudulent accounts, Wells Fargo went ahead and pulled Plaintiffs' EWS reports again.

Thus, the supposed permissible purpose Wells Fargo asserted in its successful argument for dismissal of the FAC – that it was using the EWS reports for identity verification purposes in connection with account opening – is doubly refuted and negated by the allegations in the SAC. Regardless of the labels Wells Fargo used to justify accessing Plaintiffs' EWS reports, Wells Fargo never actually used EWS's reports for identity verification or fraud prevention purposes – had it done so, presumably Wells Fargo would have promptly cancelled the fraudulent accounts and instructed EWS to delete any prior reporting regarding the fraudulent accounts. Wells Fargo instead continued reporting trade line information to EWS regarding the fraudulent accounts, continued processing fraudulent transactions through the fraudulent accounts, and continued pulling Plaintiffs' EWS reports without a good faith belief that it had a legitimate business purpose to obtain them. Wells Fargo's continued use of these conclusory labels to describe its supposed purposes for obtaining Plaintiffs' EWS reports simply cannot be squared with its failure to actually use EWS's reports for these purposes.

### III. ARGUMENT

**A. The Court Should Deny Wells Fargo's Motion To Dismiss The Second Amended Complaint's Claims Against Wells Fargo For Violation Of The FCRA And CCRAA's Prohibitions Against Obtaining Consumer Reports Without A Permissible Purpose.**

The SAC asserts valid claims against Wells Fargo for obtaining Plaintiffs' EWS consumer reports without having a reasonable belief that it had a permissible purpose to obtain them, in violation of both the FCRA and the CCRAA. The Ninth Circuit recognizes that the purpose of the FCRA is "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *Nayab v. Capital One Bank USA*, 942 F.3d 480, 492 (9th Cir. 2019) (quoting 15 U.S.C. § 1681). Thus the FCRA reflects

Congress' concern for privacy in one's consumer report. This concern is highlighted in the FCRA's broad limitations of the circumstances in which users of credit reports may obtain them.

15 U.S.C. § 1681b(f), as well as the FCRA's express civil liability provisions against users who violate these limitations, includes statutory damages for willful violations, as well as criminal and civil liability for users who obtain credit reports under false pretenses, 15 U.S.C. § 1681q. Thus, the Ninth Circuit has held that a plaintiff "has standing to vindicate her right to privacy under the FCRA when a third-party obtains her credit report without a purpose authorized by the statute, regardless whether the credit report is published or otherwise used by that third-party." *Id*. at 493. FCRA Section 1681b protects "the consumer's substantive right to control who received their credit report and identify any violation of their rights of privacy and information." *Tailford v. Experian Info. Sols. Inc*., 26 F.4th 1092, at 1100 (9th Cir. 2022).

Whether asserted under the FCRA or the CCRAA, a plaintiff must allege the following to state a claim against a user of the plaintiff's consumer report for obtaining the report without a permissible purpose: "(1) the defendant obtained a consumer credit report from a Consumer Reporting Agency, (2) without a permissible purpose, and (3) the defendant acted willfully or negligently in requesting the report." *Graham v. Sunnova Energy Int'l, Inc.*, No. 22-cv-0622, 2024 WL 871858, 2024 U.S. Dist. LEXIS 34415, at *16 (E.D. Cal. Feb. 28, 2024) (citations and quotation omitted) (denying defendant's motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6)). The CCRAA is the state analogue to the FCRA and mirrors its provisions. *Guimond v. Trans Union Credit Information Co*., 45 F.3d 1329, 1335 (9th Cir. 1995); *see also* Cal. Civ. Code § 1785.11(a). The Ninth Circuit indicated that the Court "operate[s] under the assumption that California courts would interpret the FCRA and CCRAA consistently." *Carvalho v.Equifax Info. Servs*., LLC, 629 F.3d 876, 890 (9th Cir. 2010) (citing *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 3 Cal. Rptr. 3d 301, 309 (Ct. App. 2003)). The circumstances under which the CCRAA authorizes a credit report to be obtained "are essentially those identified in the FCRA." *Mnatsakanyan v. Cal. Prof. Corp. Calvary Portfolio Services, LLC*, 2013 U.S. Dist. LEXIS 189379, 2013 WL 10156242, at *7 (C.D. Cal. Jan. 22, 2013).

To satisfy the burden of pleading a claim arising under § 1681b, ". . . the Ninth Circuit [has] indicated that "[a] plaintiff need allege only facts giving rise to a reasonable inference that the defendant obtained his or her credit report in violation of § 1681b(f)(1) to meet their burden of pleading." In contrast, "the defendant[] has the burden of pleading it had an authorized purpose to acquire [a] credit report." The Ninth Circuit explained, "placing the burden on the plaintiff would be unfair, as it would require the plaintiff to plead a negative fact that would generally be peculiarly within the knowledge of the defendant."" *Graham,* 2024 U.S. Dist. LEXIS 34415, at *19 (quoting *Nayab,* 942 F.3d at 493) (citations omitted).

### 1. *The Allegations In Plaintiffs' SAC Give Rise To A Reasonable Inference That Wells Fargo Did Not Have a Reasonable Belief That It Had A Legitimate Business Purpose For Obtaining Plaintiffs' EWS Consumer Reports.*

Both the FCRA (§1681b) and the CCRAA (California Civil Code §§ 1785.19, 1785.11) require users of consumer reports to have a reasonable belief that they are obtaining a consumer report for a permissible purpose before obtaining a consumer's report. In its previous Dismissal Order, the Court notes that 15 U.S.C. § 1681b "enumerates a variety of permissible purposes, including access based on "a legitimate business need for the information." Indeed, this Court's prior opinion on the motions to dismiss Plaintiffs' FAC specifically noted that "[c]ourts have held that accessing a consumer report for identity verification is a permissible purpose." ECF No. 90, at 7 (citing *Domante v. Dish Networks, LLC*, 974 F.3d 1342 (11th Cir. 2020). ECF. 90, at 7 (citing 15 U.S.C. § 1681b(a)(3)(F)). Ultimately, the Court found that Plaintiffs' FAC did not sufficiently state a claim for relief under the FCRA against Wells Fargo, as Plaintiffs' FAC did not allege facts sufficient for the Court to infer that Wells Fargo accessed Plaintiffs' credit reports without a permissible purpose. ECF No. 90, at 7-8. Although Wells Fargo continues to assert, without evidence, that it obtained Plaintiffs' EWS reports for the presumably permissible purpose of "identity verification," unlike the allegations in the FAC, the SAC's allegations directly negate and contradict Wells Fargo's unsupported claim regarding its claimed permissible purpose for obtaining Plaintiffs' EWS reports.

**2.    The Facts And Reasoning Of The Cases On Which Wells Fargo's Arguments For Dismissal Rely Are Distinguishable From The SAC's Allegations Regarding Wells Fargo's Conduct In This Case.**

Wells Fargo fails to identify a single case in which a court has held that a user of a credit report had a reasonable belief that it had a permissible purpose for obtaining a consumer report under the circumstances described in the SAC. The only case Defendants cite in which a court found a defendant had a reasonable belief that it had a permissible purpose for obtaining a consumer report in response to an account application the defendant knew to be fraudulent is *Bickley v. Dish Network, LLC,* 751 F.3d 724 (6th Cir. 2014). In *Bickley*, the defendant ran identity checks with credit reporting agencies in response to a fraudulent account application containing a mix of the plaintiff's true and false PII. When credit reporting agencies confirmed to the defendant in *Bickley* that the PII in the fraudulent account application did not match the plaintiff's PII, unlike Wells Fargo, the defendant in *Bickley* properly refused to open the fraudulent account.

The ultimate issue in *Bickley* was whether, despite having already determined that the account application was fraudulent, the defendant nevertheless reasonably believed it obtained the plaintiff's credit report for a legitimate business purpose. Finding that the defendant's pulling of Bickley's credit report "to avoid fraud" was a permissible purpose under the circumstances, the *Bickley* court dismissed the plaintiff's §1681b claim.[2] In the SAC, Plaintiffs do not allege that Wells Fargo pulled their EWS reports "to avoid fraud," and the allegations in the SAC negate any inference that Wells Fargo reasonably believed its purpose in pulling the Plaintiffs' EWS reports was to "avoid fraud" since, unlike the defendant in *Bickley*, Wells Fargo did nothing to avoid fraud before or after obtaining the Plaintiffs' EWS reports, even though those reports re-confirmed what the SAC alleges Wells Fargo already knew (via LNRS) – that the PII in the fraudulent Wells Fargo account applications was false.

---

[2] Arguably, one could question whether it was reasonable for the defendant in *Bickley* to believe that it had a permissible purpose of "preventing fraud" for pulling the plaintiff's credit report, as nothing in that opinion indicates how or why pulling Bickley's credit after identifying and preventing the fraud might somehow help prevent some other fraud, but that issue is not addressed in the *Bickley* opinion.

Moreover, Wells Fargo's conduct, unlike that of the defendant in *Bickley*, was inconsistent with that of an entity that pulled Plaintiffs' EWS reports based on a reasonable belief that it was entitled to do so for the permissible purpose of "avoiding fraud." Wells Fargo had already opened the fraudulent accounts in Plaintiffs' names–*before* obtaining the EWS reports, and it did not actually investigate the obvious discrepancies between the false PII in its fraudulent accounts and the consistent, contrary PII in LNRS's and EWS's records for Plaintiffs. Wells Fargo also continued to access Plaintiffs' EWS reports after being on doubly on notice–from both LNRS and EWS-that the PII in the fraudulent Wells Fargo account applications was false, and Wells Fargo continued to allow fraudulent and derogatory financial transactions to be processed through the fraudulent accounts, which transactions Wells Fargo reported to EWS for publication to third parties accessing Plaintiffs' EWS consumer files. Thus, neither the facts nor the holding in *Bickley* lend any help to Wells Fargo's arguments in this case because Wells Fargo's conduct was not consistent with a user of a credit report that was actually concerned with preventing fraud.

The other cases Wells Fargo cites in connection with its claim that it had a reasonable belief that it had a permissible purpose for pulling Plaintiffs' EWS reports, *Carlson*, *Domante*, and *Glanton*, are all wholly inapplicable to the facts alleged in Plaintiffs' SAC because those cases involved defendants who performed credit pulls in connection with evaluating consumer account applications without having any foreknowledge that the account application might contain false PII.[3]

In *Carlson*, the plaintiff did not allege, as Plaintiffs in the instant case allege, that before obtaining the plaintiff's credit report, the defendant had reason to believe that it was requesting a credit report associated with someone other than the actual person who was applying for the account. Indeed, the summary judgment opinion in *Carlson* explicitly adopts "the reasonableness of an entity's belief that the consumer initiated a transaction" as the standard for determining liability under the FCRA for violation of § 1681b, noting that, had the defendant had "*any* inkling" that the application it received contained the wrong consumer's information, the question of reasonable

---

[3] *See, e.g. Carlson v. Synchrony Bank*, 2022 WL 13022841 (W.D. Wisc. 2022); *Domante v. Dish Networks, L.L.C.*, 974 F.3d 1342 (11th Cir. 2020); *Glanton v. DirecTV, LLC*, 172 F.Supp. 3d 890 (D. S.C. 2016).

belief may be allowed to proceed past summary judgment. Also, the credit pull in *Carlson* was made to determine credit-worthiness, not for identity verification purposes. Thus, in contrast to the facts alleged in the SAC, *Carlson* involved a defendant that pulled the plaintiff's credit without any foreknowledge of the falsity of the information in the account application and did not pull the plaintiffs' consumer report for the purpose of identity verification.

Moreover, unlike the defendant in *Carlson*, Wells Fargo pulled Plaintiffs' EWS reports *after* opening the fraudulent accounts, so Wells Fargo could not have been obtaining the Plaintiffs' EWS reports for the ostensibly permissible purpose of evaluating Plaintiffs' credit in connection with an extension of credit (as opposed to for identity verification purposes), unlike the defendant in *Carlson*, which was pulling the plaintiff's report in connection with opening a credit card, which is a different permissible purpose than the identity verification / fraud prevention purposes which Wells Fargo claims (without evidence) were the reasons it first accessed Plaintiffs' EWS reports. Thus, under Judge Conley's reasoning in *Carlson*, Plaintiffs' allegations would survive summary judgment because Wells Fargo absolutely had an "inkling" that the PII associated with its fraudulent accounts in Plaintiffs' names was false prior to and upon first obtaining the Plaintiffs' EWS reports, as well as when Wells Fargo again obtained Plaintiffs' EWS reports, which raises a fact question as to the reasonableness(or recklessness) of Wells Fargo's belief that its fraudulent accounts were legitimate when it obtained Plaintiffs' EWS reports.

The facts of the instant case are also facially distinguishable from those in the *Domante* case Wells Fargo cites in its motion, in which the defendant actually acted in a manner consistent with its stated purpose for obtaining the consumer report, by declining to open an account when presented with a fraudulent application after obtaining and reviewing a consumer report that revealed that the account application was fraudulent. Unlike Wells Fargo's alleged conduct described in the SAC, the *Domante* defendant's conduct was consistent with the conduct of a user that was actually pulling consumer reports for identity verification / fraud detection purposes. By contrast, Wells Fargo ignored the Plaintiffs' contradictory PII in both the LNRS and EWS reports, which is inconsistent with its unsupported assertion that it used those reports for identity verification and/or fraud

prevention. Thus, the SAC's allegations about Wells Fargo's actual impermissible conduct therefore present a disputed fact issue that cannot be resolved at the pleading stage.

The *Glanton* case offers no support for Defendants' argument that it had a proper purpose in obtaining Plaintiffs' EWS reports. *Glanton* involved a *pro se* plaintiff asserting §1681b impermissible pull claims against a defendant that obtained Plaintiffs' credit in connection with a fraudulent account application. As in *Domante* and *Carlson*, the plaintiff in *Glanton* did not allege that the defendant had reason to know the account application in the plaintiff's name was fraudulent before obtaining the plaintiff's consumer report. Nor did the plaintiffs in *Glanton*, *Domante*, and *Carlson* allege that the defendant continued pulling their credit after learning that the account applications using those plaintiffs' PII were fraudulent, which Plaintiffs allege Wells Fargo continued to do in this case. Accordingly, none of these cases actually support dismissal of Plaintiffs' FCRA and CCRAA claims against Wells Fargo in this case.

### 3. *Wells Fargo Is Asking The Court To Make Unreasonable Inferences.*

Wells Fargo's motion essentially asks the Court to accept as true Wells Fargo's allegation that it had a reasonable belief that it had a permissible purpose (allegedly identity verification and/or fraud prevention) for pulling Plaintiffs' EWS reports *because Wells Fargo says that is why it obtained them*. However, in light of the SAC's unrefuted contrary allegations negating the plausibility of Wells Fargo's claimed purpose for obtaining Plaintiffs' EWS reports, Wells Fargo's alleged actions speak far louder than its unsubstantiated justification: Wells Fargo points to no facts in the SAC or otherwise that would support an inference that it was in fact pulling Plaintiffs' EWS reports for legitimate, good faith identity verification or fraud prevention purposes.

Plaintiffs do not dispute that identity verification *could* be a permissible purpose for accessing a consumer report. However, Wells Fargo's conduct described in the SAC is inconsistent with the conduct of a user that actually obtained Plaintiffs' consumer reports in good faith for identity verification purposes. Rather, the SAC's description of Wells Fargo's conduct (doing nothing to investigate materially inconsistent PII, leaving the fraudulent accounts open, processing fraudulent transactions through the accounts, reporting fraudulent account information to EWS, and

continuing to pull additional EWS reports for Plaintiffs) is incompatible with Wells Fargo's claimed permissible identity verification purpose for obtaining Plaintiffs' EWS reports and instead supports Plaintiffs' assertion that Wells Fargo's unauthorized credit pulls were done willfully.

Notwithstanding the unsubstantiated assertions in Wells Fargo's motion to dismiss the SAC, Plaintiffs also do not allege anywhere in the SAC that a bank "must be *absolutely certain* of a consumer's identity" before requesting credit reporting. ECF No. 97, p. 1. Rather, the relevant issue is whether the Plaintiffs' allegations in the SAC contradict or negate Wells Fargo's asserted basis for having a reasonable belief that it was pulling Plaintiffs' EWS reports for a permissible purpose. *See* ECF No. 90 at 8:12-13 (dismissing FAC's FCRA and CCRAA unauthorized pull counts on the basis that "…Plaintiffs have neither addressed nor negated the one justification Wells Fargo provided.").

Notably, in connection with this Court's opinion on the motions to dismiss Plaintiffs' FAC, this Court's analysis of Plaintiffs' related claims against EWS for improperly furnishing Plaintiffs' consumer reports to Wells Fargo without having a reasonable basis to believe Wells Fargo had a permissible purpose for obtaining Plaintiffs' EWS reports, in footnote 3, the Court noted "it is plausible that, upon amendment, Plaintiffs could show that based on its possession of contradictory information, it was not reasonable for Early Warning to believe that Wells Fargo sought the consumer reports for a legitimate business purpose." This same principle applies to Wells Fargo with respect to the SAC's allegations–based on Wells Fargo's possession of contradictory information (and failure to investigate or do anything about it prior to opening the fraudulent accounts), Wells Fargo could not have actually reasonably believed it was obtaining the Plaintiffs' EWS reports for the alleged legitimate business purposes of identity verification or fraud prevention.

The allegations contained in Plaintiffs' SAC maintain that Wells Fargo failed to take *reasonable* action despite having a reasonable basis to believe that account applications in Plaintiffs' names were not legitimate. However, Wells Fargo asks the Court to hold that its belief in the validity of the account applications can be reasonable because they contained only some correct PII, which is tantamount to asking the Court to hold that it is reasonable for a bank to open an online account

in a consumer's name, without further investigation, based on an account application that includes obviously incorrect PII, if the application happens to include *any* correct PII for the person in whose name the account is opened, an obviously untenable outcome.

**B.      Plaintiffs Allege Wells Fargo's Violations Of The FCRA And CCRAA Were Both Willful And Negligent.**

   **1.      *The SAC Sufficiently Alleges Willfulness By Asserting That Wells Fargo Intentionally Or Recklessly Obtained Plaintiffs' EWS Reports Without A Permissible Purpose.***

The SAC alleges Wells Fargo's request for Plaintiffs' EWS reports without a permissible purpose was knowing and reckless because Wells Fargo failed to investigate the incompatible PII in LNRS's reports prior to obtaining Plaintiffs' EWS reports and, after obtaining Plaintiffs' EWS reports confirming the falsity of the PII Wells Fargo associated with the fraudulent accounts, Wells Fargo again conducted no investigation of these discrepancies and continued to access Plaintiffs' EWS reports, despite having no permissible purpose for doing so. To state a claim for a willful violation under Section 1681n, a plaintiff must allege conduct that was "intentional or reckless." *Kirchner v. Shred-it USA Inc.*, 2014 U.S. Dist. LEXIS 164940, at *3 (E.D. Cal. Nov. 25, 2014) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)). Willfulness can be established if "the defendant obtained plaintiff's credit reports under false pretenses or knowingly without a permissible purpose, and that the defendant acted willfully when it requested the report." *Vandyke v. N. Leasing Sys. Inc.*, 2009 U.S. Dist. LEXIS 95757, 2009 WL 3320464, at *3 (E.D. Cal. Oct. 14, 2009) (citing *Myers v. Bennett Law Offices*, 238 F.Supp.2d 1196, 1201 (D. Nev. 2002)). "Willful" conduct also includes "knowing and reckless" violations. *Mnatsakanyan v. Goldsmith & Hull APC*, 2013 U.S. Dist. LEXIS 189380, 2013 WL 10155707, at *7 (C.D. Cal. May 14, 2013). Allegations that a defendant had knowledge of the FCRA's requirements prior to any violation "can be read to allege willfulness in terms of either knowledge or recklessness." *Travelers Prop. Cas. Co. v. Kan. City Landsmen, L.L.C.*, 592 F. App'x 876, 889 (11th Cir. 2015). For purposes of the instant Rule 12(b)(6) motion, Plaintiffs allegations meet the standard for willfulness.

Wells Fargo's unauthorized credit pulls are objectively unreasonable such that they are willful violations of the FCRA. First, Plaintiff allege that "Wells Fargo willfully accessed portions or all of Plaintiffs' consumer credit reports under false pretenses or knowingly without a permissible purpose … as part of their synthetic identity fraud scheme." SAC at ¶ 182. Further, Plaintiffs "were not Wells Fargo customers and did not authorize Wells Fargo to access their Early Warning Reports." *Id.* at ¶ 204. Also, much of the PII connected with the unauthorized Wells Fargo accounts was inaccurate, yet Wells Fargo continued past mere identity verification to actually retrieve Plaintiffs' credit reports from Early Warning. SAC, ¶¶ 26, 34, 42.

### 2. *The SAC Alleges Wells Fargo Negligently Obtained Plaintiffs' EWS Reports Without A Permissible Purpose.*

Liability for negligent noncompliance is established under Section 1681o. *See Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002). The First Circuit explained, "A negligent noncompliance claim resembles a garden-variety negligence claim, with a substantive provision of the FCRA providing the relevant duty and standard of care." *McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 92 (2022). Toward this end, a claim for negligent noncompliance requires a plaintiff to show actual damages. *See* 15 U.S.C. § 1681o(a). The Ninth Circuit observed that "the term 'actual [*27] damages' has been interpreted to include recovery for emotional distress and humiliation." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

Similarly, Plaintiffs allege sufficient facts to demonstrate Wells Fargo's negligent violations of the FCRA. Plaintiffs never provided Wells Fargo with their PII, yet Wells Fargo nevertheless accessed Plaintiffs' credit reports after being on notice that their PII for Plaintiffs did not match the PII associated with Plaintiffs' other accounts, and Wells Fargo did nothing to investigate these material discrepancies. *See* SAC, at ¶¶ 42, 103, 184. Additionally, because Plaintiffs allege that Wells Fargo's negligent violation of §1681b (and equivalent provisions of the CCRAA) caused them to suffer actual damages, these negligent violation claims survive Wells Fargo's Rule12(b)(6) challenge. Plaintiffs allege that they have experienced significant stress, distress, and frustration as a result of the unauthorized pulls of their Early Warning reports by Wells Fargo. SAC, ¶¶ 188,190.

1  These allegations, in addition to those supporting willful violation of the FCRA, "go beyond merely reciting the required elements of willfulness or negligence in violating the FCRA, and are sufficient to give Wells Fargo notice of the grounds upon which Plaintiffs' FCRA claim rests." *Levinson v. Transunion LLC*, 2016 U.S. Dist. LEXIS 72284, at *12-13 (C.D. Cal. June 2, 2016).

### C. The SAC's Allegations Establish Plaintiffs' Standing To Litigate Their Claims Against Wells Fargo For Its Alleged Willful And Negligent Violations Of The FCRA and CCRAA

Because Plaintiffs allege a willful violation of the FCRA, they do "not need to plead actual damages to survive dismissal—regardless of the sufficiency of [their] pleading emotional distress and creditworthiness damages." *Lara v. Experian Info. Sols., Inc.*, 2021 U.S. Dist. LEXIS 118150, at *9 (S.D. Cal. June 24, 2021) (citing *Vandonzel v. Experian Info. Sols., Inc.*, U.S. Dist. LEXIS 120117, at *18-19 (N.D. Cal. July 31, 2017) ("[T]he Court finds that Plaintiff has sufficiently alleged an entitlement to statutory damages. This alone is adequate to sustain Plaintiff's FCRA claim.").

With respect to Plaintiffs' claim that Wells Fargo negligently violated the FCRA, "[t]he term 'actual damages' has been interpreted to include recovery for emotional distress and humiliation." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (recognizing that intangible harms can be sufficiently concrete to support standing, including ". . . reputational harms, disclosure of private information, and intrusion upon seclusion.") And denial of credit is not a prerequisite to recovery under the FCRA. *See id.* Because the SAC alleges Plaintiffs have suffered emotional distress as a result of Wells Fargo's negligent violations of the FCRA and CCRAA, Plaintiffs have standing to pursue these claims. Moreover, at the pleading stage, general factual allegations regarding Plaintiffs' injuries resulting from Wells Fargo's violations of the FCRA and CCRAA suffice to survive Rule 12(b)(6) dismissal. *Tailford. v. Experian Info. Sols., Inc.*, 26 F.4th 1092 (9th Cir. 2024).

For purposes of Plaintiffs' CCRAA claim, the SAC alleges that Plaintiff Linda Jordan incurred emotional distress damages, which are actual damages resulting from Wells Fargo pulling

her EWS report without a permissible purpose. Defendants' argument that the SAC alleges "no injuries under the CCRAA" is too cute by half. Plaintiffs' injuries result from Wells Fargo's conduct, not the statute, and these facts are set forth in the complaint. As Wells Fargo concedes, the legal standards applicable to CCRAA claims are no different than those applicable to the equivalent FCRA claims, so Wells Fargo's attempt to require needless repetition of factual allegations about Plaintiffs' damages in the SAC places form over substance – the SAC puts Wells Fargo amply on notice of the nature of Plaintiffs' damages claims.

### D. Wells Fargo & Co. Is A Properly Named Defendant

Wells Fargo & Co. is a properly named Defendant, because the SAC alleges Wells Fargo & Co. was involved in obtaining Plaintiffs' Early Warning credit reports without a permissible purpose in violation of 15 U.S.C. 1681b. SAC, ¶¶ 100, 101, 118, 119.

## IV. CONCLUSION

For the foregoing reasons, Wells Fargo's Motion should be denied in its entirety. Should the Court grant the Motion, in whole or in part, Plaintiffs respectfully request leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

Dated: August 26, 2024

By  */s/ Theodore O. Bartholow, III*
Theodore O. Bartholow, III (pro hac vice)
*Attorneys for Plaintiffs*

**Additional Counsel for Plaintiff**
**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, UT 84790
Telephone:   (800) 400-6808
Facsimile: (800) 520-5523