1  **MCGUIREWOODS LLP**
   DAVID C. POWELL SBN 129781
2  ALICIA A. BAIARDO SBN 254228
   Two Embarcadero Center, Suite 1300
3  San Francisco, CA 94111-3821
   Telephone: 415.844.9944
4  Facsimile: 415.844.9922
   dpowell@mcguirewoods.com
5  abaiardo@mcguirewoods.com

6  **MCGUIREWOODS LLP**
   MOLLY M. WHITE SBN 171448
7  1800 Century Park East, 8th Floor
   Los Angeles, CA 90067-1501
8  Telephone: 310.315.8200
   Facsimile: 310.315.8210
9  mwhite@mcguirewoods.com

10 *Attorneys for Wells Fargo & Company and*
   *Wells Fargo Bank, N.A.*

11

12              **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14                **SAN FRANCISCO DIVISION**

15

16 BERNARD J. PATTERSON; JOSHUA P.          Case No. 3:23-cv-3858-TLT
   ADAMS; LINDA G. JORDAN, individually
17 and on behalf of all others similarly situated,   The Hon. Trina L. Thompson

18            Plaintiffs,                    **WELLS FARGO & CO. AND WELLS**
                                             **FARGO BANK, N.A.'S REPLY IN**
19         v.                                **SUPPORT OF THE MOTION TO**
                                             **DISMISS PLAINTIFFS' SECOND**
20 WELLS FARGO & CO.; WELLS FARGO            **AMENDED COMPLAINT**
   BANK, N.A.; EARLY WARNING
21 SERVICES, LLC; LEXISNEXIS RISK            Complaint Filed:    August 1, 2023
   SOLUTIONS INC.,                           FAC Filed:          November 6, 2023
22                                           SAC Filed:          July 10, 2024
23            Defendants.
                                             Hearing Date:       October 29, 2024
24                                           Time:               2:00 p.m.
                                             Courtroom:          9
25

26

27

28
                                                      Case No. 3:23-cv-3858-TLT

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ......................................................................................................... 1

II.  LEGAL ARGUMENT .................................................................................................. 1

    A.   The SAC Should Be Dismissed With Prejudice Because It Fails to Cure the Deficiencies the Court Identified in Its Dismissal Order. ................................. 1

    B.   Plaintiffs' SAC Requires Unreasonable and Unsupported Leaps. ..................... 3

        1.   Inconsistent PII does not establish fraud. ............................................. 3

        2.   Lack of inconsistent PII is not a prerequisite for requesting consumer reports. ................................................................................. 4

    C.   Plaintiffs Cannot State FCRA or CCCRAA Claims ......................................... 7

        1.   Wells Fargo had a legitimate purpose for requesting Plaintiffs' reporting. ............................................................................................... 8

        2.   No willful or negligent violations of the FCRA or CCCRAA are alleged. ................................................................................................. 9

    D.   Harm Is Insufficiently Pleaded and Plaintiffs Lack Standing. ........................ 11

    E.   Plaintiffs Make No Plausible Allegations Against Wells Fargo & Company ........ 14

III. CONCLUSION .......................................................................................................... 15

WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 3, 14

*Bickley v. Dish Network, LLC*,
751 F.3d 724 (6th Cir. 2014)...........................................................................*passim*

*Burnell v. Marin Humane Soc'y*,
No. 14-CV-5635-JSC, 2015 WL 6746818 (N.D. Cal. Nov. 5, 2015) .................... 14

*Burnthorne-Martinez v. Sephora USA, Inc.*,
No. 16-CV-02843-YGR, 2016 WL 6892721 (N.D. Cal. Nov. 23, 2016)........................ 12, 13

*Carlson v. Sychrony Bank*,
No. 21-cv-077-wmc, 2022 WL 1302841 (W.D. Wisc. May 2, 2022) ...................... 5, 6, 7, 11

*Connelly v. Remkes*,
No. 14-CV-1344-LHK, 2014 WL 5473144 (N.D. Cal. Oct. 28, 2014) .................................. 14

*Dewi v. Wells Fargo Bank*,
No. 12-2891, 2012 WL 10423239 (C.D. Cal. Aug. 8, 2012)................................... 13

*Domante v. Dish Networks, L.L.C.*,
974 F.3d 1342 (11th Cir. 2020).......................................................................... 5, 6

*In re Ford Tailgate Litig.*,
2014 WL 3899545 (N.D. Cal. Aug. 8, 2014) .......................................................... 2

*Glanton v. DirecTV, LLC*,
172 F. Supp. 3d 890 (D.S.C. 2016) .................................................................... 6, 9

*Guimond v. Trans Union Credit Info. Co.*,
45 F.3d 1329 (9th Cir. 1995)............................................................................... 13

*Levinson v. Transunion LLC*,
No. CV1600837RSWLPLAX, 2016 WL 3135642 (C.D. Cal. June 2, 2016)..................... 12

*Levitt v. Yelp! Inc.*,
No. C-10-1321 EMC, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011), aff'd, 765
F.3d 1123 (9th Cir. 2014).......................................................................................... 2

*Messano v. Experian Info. Sols., Inc.*,
251 F. Supp. 3d 1309 (N.D. Cal. 2017) ............................................................... 10

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ................................................................................................. 10

*Shaw v. Experian Info. Sols., Inc.*,
    891 F.3d 749 (9th Cir. 2018) ............................................................................... 10

*Sion v. SunRun, Inc.*,
    No. 16-CV-05834-JST, 2017 WL 952953 (N.D. Cal. Mar. 13, 2017) ................. 12

*Thompson v. Bank of Am., N.A.*,
    2015 WL 355707, at *2 (N.D. Cal. Jan. 27, 2015) .............................................. 10

**State Cases**

*Rodriguez v. Bank of the West*,
    162 Cal. App. 4th 454 (2008) .............................................................................. 11

**Federal Statutes**

15 U.S.C. § 1681b(f) ................................................................................................. 11

15 U.S.C. § 1681n(a) ................................................................................................. 12

15 U.S.C. § 1681o(a)(1) ............................................................................................. 12

Fair Credit Reporting Act ................................................................................. *passim*

**State Statutes**

Cal. Civ. Code § 1785.31 ........................................................................................... 12

California Consumer Credit Reporting Agencies Act .......................................... *passim*

WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

1   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.      <u>INTRODUCTION</u>**

3          Plaintiffs' Opposition to Wells Fargo Bank, N.A. and Wells Fargo & Company's ("Wells

4   Fargo") Motion to Dismiss Plaintiffs' Second Amended Complaint (the "Opposition") does not cure

5   the deficiencies in the First Amended Complaint ("FAC"), which the Court dismissed in its entirety

6   against Wells Fargo. Claiming to cure infirmities identified by the Court, Plaintiffs now allege that

7   because Wells Fargo possessed allegedly accurate personal identification information ("PII") from

8   LexisNexis Risk Solutions, Inc. ("LNRS"), Wells Fargo must have known that fraudsters were

9   attempting to open accounts in the names of Plaintiffs Bernard J. Patterson ("Patterson"), Joshua P.

10  Adams ("Adams"), and Linda G. Jordan ("Jordan") (collectively, "Plaintiffs"), so therefore Wells

11  Fargo purportedly violated the Fair Credit Reporting Act ("FCRA") and/or the California Consumer

12  Credit Reporting Agencies Act ("CCCRAA") by obtaining identity information from Early Warning

13  Services, Inc. ("EWS"). The four main problems for Plaintiffs are that: (1) they do not allege

14  sufficient facts to establish that Wells Fargo knew there was fraud, instead asking the Court to make

15  an unreasonable inference that because Wells Fargo had some inconsistent PII, Wells Fargo must

16  have known there was fraud; (2) they ask the Court to ignore case law that even if a financial

17  institution possesses some conflicting PII, the financial institution may request credit reporting

18  because identity verification is a permissible purpose for requesting credit reporting; (3) Plaintiffs

19  have not adequately alleged willful or negligent conduct; and (4) Plaintiffs have failed to sufficiently

20  allege harm, a prerequisite for establishing standing. At the end of the day, Plaintiffs fail to cure the

21  shortcomings identified in the Court's May 30, 2024 Order dismissing the FAC ("Dismissal Order").

22  Plaintiffs cannot plausibly allege violations of the FCRA or the CCCRAA. The Court should

23  therefore dismiss Plaintiffs' Second Amended Complaint ("SAC") with prejudice.

24  **II.     <u>LEGAL ARGUMENT</u>**

25          **A.      The SAC Should Be Dismissed With Prejudice Because It Fails to Cure the**

26          **Deficiencies the Court Identified in Its Dismissal Order.**

27          Plaintiffs' SAC should be dismissed with prejudice for failing to cure the deficiencies of the

28

FAC specifically identified by the Dismissal Order. Because the further amended complaint suffers from the same flaws as the previously dismissed complaint, the Court may dismiss the SAC without leave to amend. *In re Ford Tailgate Litig.*, 2014 WL 3899545, at *6 (N.D. Cal. Aug. 8, 2014) ("A court may deny leave to amend on the basis of [...] repeated failure to cure deficiencies by amendments previously allowed."); *Levitt v. Yelp! Inc.*, No. C-10-1321 EMC, 2011 WL 5079526, at *9 (N.D. Cal. Oct. 26, 2011), aff'd, 765 F.3d 1123 (9th Cir. 2014) (dismissing complaint with prejudice because "amend[ment] [...] would be futile [...] Plaintiffs have already been granted leave to amend to cure the same deficiencies described herein and have failed to do so.").

The Court's Dismissal Order identified specific deficiencies in the FAC. Acknowledging that identity verification is a permissible purpose for accessing a consumer's report under the FCRA and CCCRAA, the Dismissal Order stated that to sufficiently plead a violation of the FCRA or CCCRAA, there must be allegations "that [Plaintiffs'] credit report[s] [were] obtained for a purpose not authorized by statute." Dismissal Order at 7:14-15, 11-12 (applying the same to the CCCRAA) (citations omitted). The Dismissal Order states: "Wells Fargo accessed Plaintiffs' credit reports to verify their identities, and had reason to believe that the transaction was initiated by Plaintiffs based on partially accurate PII in its possession and the verification it received from [EWS]." *Id.* at 7:23-8:3; *see id.* at 11-12 (applying same rationale to the CCCRAA). Plaintiffs "all but conceded that Wells Fargo was an unsuspecting party" and they cannot now allege otherwise. *Id.* at 8:13-14.

Plaintiffs attempt to circumvent this holding by claiming that because Wells Fargo allegedly possessed accurate PII from LNRS, Wells Fargo must have known there was fraud. As set forth below, Plaintiffs have not alleged sufficient facts to show that Wells Fargo knew the account applications were fraudulent. They instead ask the Court to make the unreasonable inference that because some elements of the PII that Wells Fargo received from LNRS were inconsistent with the PII in the account applications, Wells Fargo must have known there was fraud. That is a leap in logic this Court cannot make. Plaintiffs have had enough bites at the apple: the Court should dismiss the SAC with prejudice. *Levitt*, No. C-10-1321 EMC, 2011 WL 5079526, at *9.

///

WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

**B.      Plaintiffs' SAC Requires Unreasonable and Unsupported Leaps.**

The SAC warrants dismissal with prejudice because it asks the Court: (1) to make the implausible leap that possessing some inconsistent elements of PII between account applications and LNRS reporting establishes knowledge of fraud, and (2) to create new law holding that financial institutions must be certain of a consumer's identity before seeking consumer reporting for identify verification purposes. The Court is required to draw no such inferences, nor create new law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a claim is considered plausible when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *see id.* ("[a]lthough for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true," the Court is "not bound to accept as true a legal conclusion couched as a factual allegation.") (citations omitted).

1.      *Inconsistent PII does not establish fraud.*

Plaintiffs assert (contrary to existing authority) that the existence of some elements of inconsistent PII between an account application and LNRS reporting establishes fraud that must be investigated before opening accounts or requesting additional identity verification information. Opp. at 11:19-22 ("[B]ased on Wells Fargo's possession of contradictory information (and failure to investigate or do anything about it prior to opening the fraudulent accounts), Wells Fargo could not have actually reasonably believed it was obtaining the Plaintiffs' EWS reports for the alleged legitimate business purposes of identity verification or fraud prevention."). This is unsupported by logic or law. Mismatching PII does not necessarily mean fraud. *See, e.g., Bickley v. Dish Network, LLC*, 751 F.3d 724, 731-32 (6th Cir. 2014) (defendant had a legitimate business reason for requesting plaintiff's credit report, affirming "[a] 'Declined No Hit' response *is not the same* as a 'Fraud Alert' response, which raises the immediate specter of identity theft."). Logic dictates that there may be many reasons for mismatched information—typographical errors, reversing the date and month of one's date of birth, or possessing outdated information (like old addresses).

In an effort to distinguish the authority that Wells Fargo cited, Plaintiffs attempt to perfunctorily dispose of *Bickley* by arguing it is distinguishable because Wells Fargo's purpose in

requesting information from EWS was to verify identities and not to "avoid fraud[.]" Opp. at 7:18-21. Plaintiffs purposefully avoid grappling with *Bickley* because it is contrary to their position. In *Bickley*, after Dish received reports indicating that a fraudster applicant had provided a mixture of accurate and inaccurate PII, it continued to seek credit reporting from Credit Reporting Agencies ("CRA") despite a "Declined No Hit" response. The *Bickley* court determined that pulling plaintiff's credit reporting was still permissible: "[a] 'Declined No Hit' response is not the same as a 'Fraud Alert' response, which raises the immediate specter of identity theft." *Bickley,* 751 F.3d at 732. Like Wells Fargo here, from "Dish's perspective, it was still dealing with a potential consumer […] there was not yet a reason to suspect identity theft." *Id.*

Further muddying the waters, Plaintiffs add a new wrinkle to their claims: Wells Fargo's conduct violated the FCRA and CCCRAA because it "[did] nothing to investigate ***materially*** inconsistent PII," yet failing to define the term, cite any authority supporting this theory, or elaborate whatsoever on the term's meaning. Opp. at 10:25-11:3 (emph. added). Regardless, any conceivable definition of "***material*** PII" would surely include social security numbers ("SSNs"), which is exactly the type of PII the fraudsters listed correctly here. SAC, ¶¶ 40 (Patterson's accurate PII included his full name, address, and SSN); 99 (Adams' correct PII included his residential address and SSN); 110 (Jordan's account was opened "in her name, using her PII, without her authorization."). Plaintiffs cannot negate that Wells Fargo—based on a mixture of accurate and inaccurate PII for Patterson and Adams, and entirely accurate PII for Jordan—reasonably believed legitimate applicants were applying for accounts. Dismissal Order at 7:23-8:3 ("Wells Fargo accessed Plaintiffs' credit reports to verify their identities, and had reason to believe that the transaction was initiated by Plaintiffs based on partially accurate PII in its possession and the verification it received from [EWS].").

2.    *Lack of inconsistent PII is not a prerequisite for requesting consumer reports.*

Plaintiffs ask the Court to create a new standard contradicted by existing law: that banks must be ***certain*** of a consumer's identity before requesting consumer reporting, by having no PII

inconsistent with what is presented on account applications. SAC, ¶¶ 26 ("Despite being on notice of the inconsistent PII used by applicants seeking to open unauthorized Wells Fargo checking accounts […] Wells Fargo nevertheless utilizes the 'detailed information' it receives from LNRS and incorrect and/or incomplete PII it receives from its applicants, to retrieve even more information on Plaintiffs and putative class members from [EWS] in the Plaintiffs' and putative class members' names, even though the applicants are clearly not who they claim they are."), 42 ("Despite being on notice of the inconsistent and incorrect PII it possessed for Patterson, Wells Fargo nevertheless proceeded with utilizing [EWS'] services […]."); Opp. at 3:8-10 ("With this inconsistent and inaccurate PII, Wells Fargo obtained Plaintiffs' credit reports […] despite being on notice of the various inaccuracies in the PII associated with the fraudulent accounts as alleged in the SAC."), 10:25-11:3 ("the SAC's description of Wells Fargo's conduct (doing nothing to investigate materially inconsistent PII […] is incompatible with Wells Fargo's claimed permissible identity verification purpose for obtaining Plaintiffs' EWS reports […]."). Such an obtuse approach does not make the conclusions they ask the Court to reach any less true. Opp. at 11:5-6 ("Plaintiffs also do not allege anywhere in the SAC that a bank 'must be *absolutely certain* of a consumer's identity' before requesting credit reporting.").

Plaintiffs' position is that because Wells Fargo was purportedly on notice that certain elements of PII were inconsistent between account applications and LNRS reporting, Wells Fargo had a duty to investigate such inconsistencies *before* requesting consumer reporting or to not request consumer reporting at all. But this is contradicted by authority that Wells Fargo cited in the Motion to Dismiss ("Motion"). *Several* cases are contrary to Plaintiffs' position. *See e.g.*, *Carlson v. Sychrony Bank*, No. 21-cv-077-wmc, 2022 WL 1302841, at *2 (W.D. Wisc. May 2, 2022) (a fraudster applying for a PayPal credit card with accurate and inaccurate PII resulted in the plaintiff's consumer reporting erroneously being pulled by PayPal because it "had reason to believe that a legitimate customer was requesting an account[.]"); *Domante v. Dish Networks, L.L.C.*, 974 F.3d 1342, 1344 (11th Cir. 2020) (despite having records of accurate PII for a consumer whose identity was stolen with explicit directions not to open a Dish account in their name, after receiving a

WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF THE MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

fraudster's application containing a mixture of accurate and inaccurate plaintiff PII Dish ran a credit report to verify an applicant's identity); *Bickley*, 751 F.3d at 731-32 (Dish "had a legitimate business reason" for requesting plaintiff's credit report, affirming "[a] 'Declined No Hit' response *is not the same* as a 'Fraud Alert' response, which raises the immediate specter of identity theft" when an application was submitted with accurate and inaccurate PII).[1]

In an attempt to dispose of on-point authority inconsistent with their arguments, Plaintiffs claim the authority cited by Wells Fargo is "wholly inapplicable" because the credit pulls were completed "without having any foreknowledge that the account application might contain false PII" much like the instant circumstances, but such a statement avoids wrestling with the nuances of relevant authority. Opp. at 8:14-18. Here—like *Bickley*, *Carlson*, and *Domante*—Wells Fargo had no foreknowledge that the applications submitted by fraudsters were illegitimate. *See* Dismissal Order at 7:23-8:3 ("Wells Fargo accessed Plaintiffs' credit reports to verify their identities, and had reason to believe that the transaction was initiated by Plaintiffs based on partially accurate PII in its possession and the verification it received from [EWS].").

Additionally, Plaintiffs misleadingly attempt to distinguish *Carlson*. To support their position, Plaintiffs articulate that Wells Fargo's conduct was wrongful because it had an "inkling" that the account applications it received were illegitimate because certain PII was inconsistent with reporting by LNRS, and *Carlson*—according to Plaintiffs—left open the possibility of liability under the FCRA if an entity had "'*any* inkling' that the application it received contained the wrong consumer's information, the question of reasonable belief may be allowed to proceed […]." Opp. at 8:24-9:1. However, a more accurate reflection of *Carlson*'s holding is that if the bank had any "evidence […] [or] any inkling that the application it received **contained the wrong SSN**, the

---

[1] *Glanton* did not specify whether there was a mixture of accurate and inaccurate PII used on any sort of application. There, plaintiff was the victim of identity theft resulting in an inquiry by Equifax. However, the opinion references that plaintiff's father may have stolen his identity, or he may have been confused for his father because they "share the same first and last name; he has also been found guilty by the local authorities for providing my personal information in order to avoid legal matters. He and I also lived at the same residence for many years, so it's easy to get our information confused." *Glanton v. DirecTV, LLC*, 172 F. Supp. 3d 890, 892 (D.S.C. 2016)

1   question of reasonable belief may be allowed to proceed […] but there is zero evidence to that effect

2   here." *Carlson*, 2022 WL 13022841, at *3 (emph. added). Each of the named Plaintiffs had accounts

3   opened in their name using the correct SSN, and the PII used to open Jordan's account was entirely

4   accurate. SAC, ¶¶ 40 (Patterson's accurate PII included his full name, address, and SSN); 99

5   (Adams' correct PII included his residential address and SSN); 110 (Jordan's account was opened

6   "in her name, using her PII, without her authorization."). Plaintiffs' efforts to distinguish *Carlson*

7   fail to reflect what the authority actually states.

8          On the other hand, Plaintiffs cite to *no* authority to support the proposition that Wells Fargo

9   was obligated to investigate inconsistent elements of PII before requesting additional reporting from

10  EWS to verify identity. *See generally* Opp. Adopting Plaintiffs' position would leave no room for

11  an account applicant to make an error on an application; for an applicant to provide outdated PII; or

12  for LNRS, EWS, or for other CRAs to make an error in reporting or have outdated PII. Such an

13  inflexible rule would render compliance impossible. Accordingly, the Court should not heed

14  Plaintiffs' requests that the Court make the farfetched leap that possessing some inconsistent

15  elements of PII establishes knowledge of fraud, or create new law holding that financial institutions

16  must be certain of a consumer's identity and have no possession of inconsistent PII before seeking

17  consumer reporting for identify verification purposes.

18         **C.      Plaintiffs Cannot State FCRA or CCCRAA Claims**

19         The Court should dismiss the SAC because it fails to sufficiently state any FCRA or

20  CCCRAA[2] violations against Wells Fargo. The facts as alleged in the SAC establish that Wells

21  Fargo had a reasonable belief that it had a legitimate business need for requesting Plaintiffs'

22  consumer reporting, and the Court has already held identity verification purposes are a permissible

23  purpose for requesting credit reports. Plaintiffs also fail to allege a willful or negligent violation of

24  the FCRA or CCCRAA.

25  _____

26  [2] Courts interpret the FCRA and CCCRAA coextensively, and find authority interpreting the former
    as dispositive and persuasive for the latter. *See* Dismissal Order at 11:23-25 ("'[T]he [CCRA] is
27  substantially based on the [FCRA],' and the Ninth Circuit has stated that 'California courts would
    interpret the FCRA and [CCRA] consistently.'") (citations omitted).
28

1          1.          *Wells Fargo had a legitimate purpose for requesting Plaintiffs' reporting.*

2          Plaintiffs' FCRA and CCCRAA claims require that Plaintiffs plead facts "giving rise to a

3  *reasonable* inference that [Wells Fargo] obtained [their] credit report[s] in violation of the [FCRA],"

4  which Plaintiffs have failed to do. Opp. at 6:2-4 (emph. added). However, Wells Fargo has clearly

5  met its burden at this stage: showing it had an authorized purpose for pulling Plaintiffs' reporting,

6  which was for identity verification. *Id.* at 6:4-5; *see also* Dismissal Order at 7:23-8:3, 11 (holding

7  the same for the CCCRAA). As reflected in the Dismissal Order, the SAC still "[does not] address

8  the most obvious reason for Wells Fargo obtaining the credit reports, and the reason provided by

9  Wells Fargo: Wells Fargo accessed Plaintiffs' credit reports to verify their identities, and had reason

10 to believe that the transaction was initiated by Plaintiffs based on partially accurate PII in its

11 possession and the verification it received from [EWS]." Dismissal Order at 7:23-8:3.

12         The reasonable belief that legitimate applicants were applying for accounts with Wells Fargo

13 is not negated by the fact that certain elements of PII were inconsistent between account applications

14 and LNRS reporting. *See, e.g., Bickley,* 751 F.3d 724. Indeed, Plaintiffs concede that the accounts

15 were opened using accurate and inaccurate PII for both Patterson and Adams, whereas the alleged

16 fraudster who opened Jordan's account had entirely accurate PII. SAC, ¶¶ 40 (Patterson's accurate

17 PII included his full name, address, and SSN); 99 (Adams' correct PII included his residential

18 address and SSN); 110 (Jordan's account was opened "in her name, using her PII, without her

19 authorization."). The Court already held that the reason for pulling Plaintiffs' consumer reporting—

20 for identity verification purposes—was legitimate under the FCRA and CCCRAA alike (Dismissal

21 Order at 7:23-8:3, 12:2-4), and Plaintiffs' lateral attack on the reasonability of Wells Fargo's belief

22 that legitimate applicants were applying for accounts does not negate this conclusion. Plaintiffs have

23 alleged no new facts to show than Wells Fargo had no permissible purpose for requesting Plaintiffs'

24 consumer reports.

25         Plaintiffs claim it was improper for Wells Fargo to conduct *any* identity verification *after*

26 the accounts at issue were opened, but they cite no authority for such a proposition. Opp. at 3:20-23

27 ("Despite having notice of these conflicts between the false PII associated with the fraudulent

28

WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF THE MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

accounts and Plaintiffs' correct PII reflected in both LNRS and EWS's records, Wells Fargo conducted no further investigation regarding the fraudulent accounts upon receiving Plaintiffs' EWS reports."); 9:6-7 ("Wells Fargo pulled Plaintiffs' EWS reports *after* opening the fraudulent accounts"); SAC, ¶ 26. These same allegations and arguments were in the FAC, but the Court did not find them compelling then either. *See, e.g.*, FAC, ¶¶ 52 ("On March 11, 2022, *the day after Wells Fargo initially opened the unauthorized Patterson account*, Wells Fargo obtained Early Warning's credit report for Patterson) (emph. added); *see also* Dismissal Order at 7:23-8:3, 12:2-4. Even if Wells Fargo sought consumer reporting after the accounts at issue were opened—albeit *a day* after the account was opened (SAC, ¶¶ 49, 102)—Plaintiffs do not allege that this is a purpose that was not authorized by the statute, which is a predicate for stating an FCRA and CCCRAA violation. *See* Dismissal Order at 7:14-16 ("To plead a violation of this Section, a plaintiff must plead 'that [their] credit report is obtained for a purpose not authorized by the statute.'") (citations omitted). There can be no FCRA or CCCRAA liability here because Wells Fargo had a permissible purpose for requesting Plaintiffs' consumer reports: "[a] showing of a permissible purpose is a complete defense'" to FCRA and CCCRAA violations warranting the SAC's dismissal with prejudice. *Glanton*, 172 F. Supp. 3d at 895.

## 2. *No willful or negligent violations of the FCRA or CCCRAA are alleged.*

Plaintiffs' amended allegations fare no better: the SAC still fails to allege willful or negligent violations of the FCRA or the CCCRAA. Boilerplate claims and recitations of law related to purported willful or negligent violations do not suffice. SAC, ¶¶ 182-83, 232-34. Plaintiffs offer no specific facts suggesting Wells Fargo acted willfully (that it knew its purpose to be improper) or negligently (that it failed to exercise due care), which warrants dismissal with prejudice. Even if the Court ignores inconsistencies in Plaintiffs' argument—the SAC baldly claims Wells Fargo engaged in a knowing violation of the FCRA and CCCRAA, whereas the Opposition claims Wells Fargo's conduct was objectively unreasonable—the SAC still warrants dismissal with prejudice. Opp. at 13:1-2 ("Wells Fargo's unauthorized credit pulls are *objectively unreasonable* such that they are willful violations of the FCRA.") (emph. added); *compare with,* SAC, ¶¶ 148 ("Given the false PII

Wells Fargo associated with Plaintiffs' […] unauthorized accounts, it was *unreasonable per se for* ***Early Warning*** to honor Wells Fargo's inquiries in connection with the opening of the unauthorized accounts.") (emph. added); 184 (regarding Wells Fargo's conduct: "Wells Fargo's impermissible access to and use of Plaintiffs' private financial information […] when Wells Fargo had knowledge that it had no legally permissible purpose to access and use that information, *constitutes **knowing*** ***and willful violations*** of the FCRA under […] *or alternatively* […] *negligent violations* […].") (emph. added).

Failure to allege facts sufficient to show a willful violation of the FCRA or CCCRAA precludes the statutory damages Plaintiffs seek. *Shaw v. Experian Info. Sols., Inc*., 891 F.3d 749, 760 (9th Cir. 2018) ("To recover statutory damages for a violation of the FCRA, [Plaintiffs] must show that [Wells Fargo] willfully failed to comply with the statute."). Willfulness requires that Wells Fargo *knowingly* or *recklessly* violate the FCRA or CCCRAA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). But "bare conclusory statements" that conduct was done "knowingly, intentionally, and in reckless disregard for credit reporting industry standards," is insufficient to withstand a motion to dismiss. *Messano v. Experian Info. Sols., Inc.*, 251 F. Supp. 3d 1309, 1316 (N.D. Cal. 2017) (the complaint contained only "bare conclusory statements" that conduct was done "knowingly, intentionally, and in reckless disregard for credit reporting industry standards," and that plaintiff should only amend allegations if she could truthfully plead facts that could plausibly show willfulness or negligence, as required to sustain a private FCRA suit).

The only allegations Plaintiffs proffer in support of the claim of a willful violation are: (1) Wells Fargo "failed to investigate the incompatible PII in LNRS's reports prior to obtaining Plaintiffs' EWS reports" and (2) after "confirming the falsity of the PII" due to "discrepancies" in reporting, Wells Fargo "conducted no investigation" and "access[ed] Plaintiffs' EWS reports […]." Opp. at 12:9-14. In the absence of additional, plausible allegations, the Court should dismiss Plaintiffs' claims for a willful violation of the FCRA or the CCCRAA. *Thompson v. Bank of Am., N.A.*, 2015 WL 355707, at *2 (N.D. Cal. Jan. 27, 2015 (dismissing FCRA claim when plaintiff alleged the defendant acted "knowingly and willfully" without providing any factual basis for the

WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

allegation); *Bickley,* 751 F.3d 724 (courts accept as proper requesting consumer reporting despite inconsistent PII); *see also* Dismissal Order at 7:23-8:3, 12:2-4 (same for CCCRAA violations).

Plaintiffs attempt to tack on claims of negligent violations of the FCRA or the CCCRAA as an afterthought, but these claims suffer from the same fatal deficiencies as the willful violations. SAC, ¶¶ 183 ("In the alternative only, Wells Fargo negligently accessed portions or all of Plaintiffs' consumer credit reports without a permissible purpose and has failed to comply with 15 U.S.C. § 1681b(f)."), 234 ("Alternatively, Defendants' conduct was negligent."). Plaintiffs' SAC contains no plausible allegations supporting a negligent violation of the FCRA or the CCCRAA. Plaintiffs have not alleged sufficient facts to show that Wells Fargo failed to exercise due care here. Instead, Plaintiffs claim they have established negligent noncompliance because such a claim resembles "a garden-variety negligence claim, with a substantive provision of the FCRA providing the relevant duty and standard of care." Opp. at 13:13-14. However, Plaintiffs' negligence claims have already been dismissed, and nowhere in the Opposition do Plaintiffs *plausibly* describe the duty owed to Plaintiffs. *Rodriguez v. Bank of the West*, 162 Cal. App. 4th 454, 460 (2008) (a bank's duty of care "arises out of the bank's contract with its customer."); *see* Section II.B.2, *infra* (Plaintiffs cite to no authority supporting the proposition that Wells Fargo *must* investigate inconsistent PII on account applications when sufficient PII, that has already been matched by LNRS and EWS, matches). Regardless, Wells Fargo's conduct—requesting consumer reporting for identity verification purposes for individuals thought to be legitimate account applicants—is not a negligent violation of the FCRA or the CCCRAA. *See e.g., Bickley,* 751 F.3d 724; *see also Carlson*, 2022 WL 13022841. Crucial to Plaintiffs' claim for a negligent violation of the FCRA and CCCRAA is the mistaken assumption that inconsistent PII is inherently reflective of fraud, which is unsupported by law. *See* Section II.B.1, *infra*. Because Plaintiffs have not plausibly alleged willful or negligent violations of the FCRA and the CCCRAA, these claims should be dismissed with prejudice.

### D.     Harm Is Insufficiently Pleaded and Plaintiffs Lack Standing.

Finally, the Court should dismiss the SAC against Wells Fargo because Plaintiffs have not sufficiently alleged harm, which is necessary to establish standing. A private right of action under

the FCRA or the CCCRAA encompasses both willful and negligent violations, but the difference between the two levels of intent impacts the available damages. A plaintiff who proves an FCRA violation was willful may recover actual damages or statutory damages, as well as any appropriate punitive damages. 15 U.S.C. § 1681n(a). Whereas negligent noncompliance provides for "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o(a)(1). Plaintiffs must allege well-pled and non-conclusory damages allegations under *either* a willful or a negligent theory of violation. *See Sion v. SunRun, Inc.*, No. 16-CV-05834-JST, 2017 WL 952953, at *4 (N.D. Cal. Mar. 13, 2017) (dismissing FCRA claim because allegations were "too speculative and vague to plausibly show actual damages stemming from alleged negligent violation of FCRA"); *Burnthorne-Martinez v. Sephora USA, Inc.*, No. 16-CV-02843-YGR, 2016 WL 6892721, at *6 (N.D. Cal. Nov. 23, 2016) (collecting cases dismissing FCRA claims based on conclusory allegations of emotional distress).

For willful violations, Plaintiffs argue they need not plead actual damages to survive dismissal, conceding that no actual damages are alleged in the SAC. Opp. at 14:8-10. However, to benefit from statutory damages alone—and omit actual damages from a pleading as Plaintiffs have done here—willful violations must be sufficiently pleaded, which is a high standard they have not met. More than a bare statement that Plaintiffs have suffered harm or actual damages is necessary. *Levinson v. Transunion LLC*, No. CV1600837RSWLPLAX, 2016 WL 3135642, at *6 (C.D. Cal. June 2, 2016) ("Plaintiffs' bare allegation that they are entitled to 'actual damages, loss of wages, damage to credit reputation, pain and suffering, costs and attorney fees' is without sufficient facts to demonstrate any particular injury resulting from [Defendant's] purported CCRAA violation."). Plaintiffs allege no injuries with sufficient specificity under the FCRA, and omit any injuries under the CCCRAA. SAC, ¶¶ 188, 190, 231, 234, 236; *see also* Cal. Civ. Code § 1785.31 (CCCRAA violations requires a showing of actual damages). Entirely omitted from the SAC are any *hard facts* that Jordan endured emotional distress as a result of any Wells Fargo conduct violative of the CCCRAA. SAC, ¶¶ 231-35.

While Plaintiffs cite *Guimond* for the notion that emotional distress is tantamount to actual

WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF THE MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

damages, the authority cited is inapplicable because in the instant case, Defendants corrected inaccurate reporting, and Plaintiffs do not allege details to support claims of emotional distress in the SAC. In *Guimond* a consumer complained to a CRA about inaccurate information in a credit report (that she was married, and the inaccurate spouse had an SSN), which the CRA claimed to have corrected. However, months later, the same inaccurate information the consumer initially complained of appeared again**,** resulting in plaintiff filing suit. The *Guimond* complaint contained assertions supporting emotional distress as a harm by alleging facts showing**,** "sleeplessness, nervousness, frustration, and mental anguish" *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1332 (9th Cir. 1995)**.** Unfortunately for Plaintiffs, the circumstances here are different: when Plaintiffs contacted Wells Fargo regarding the erroneous accounts opened in their names, the bank acknowledged the accounts were fraudulent, shut down the accounts, and corrected reporting with EWS. SAC, ¶¶ 62-64, 77, 82-87 (Wells Fargo shut down Patterson's unauthorized account and corrected erroneous tradeline reporting with EWS), 111-18 (Wells Fargo shut down Jordan's unauthorized account and corrected any erroneous tradeline reporting with EWS). Significantly, Wells Fargo promptly acted to correct erroneous reporting, which was facilitated by Plaintiffs. Indeed, Plaintiffs are sophisticated consumers who were capable of navigating these unfortunate circumstances without suffering from emotional distress; allegations in the SAC do not support a theory of Plaintiffs being concerned about reputational harm. *See* Mot. at 18:1-6; *see also* SAC ¶¶ 3 (Patterson); 92, 95-100 (Adams); 107-109, 109-118 (Jordan). Plaintiffs took immediate steps to rectify the unauthorized accounts by contacting Wells Fargo about the same and requesting the accounts be shut down, Plaintiffs promptly requested consumer reporting, Plaintiffs requested mistaken tradeline information be corrected, and Jordan even obtained enhanced credit monitoring as a result. SAC, ¶¶ 82-87; 93, 97; 109, 111-18. Plaintiffs have made no specific allegations supporting claims of emotional distress here.

 To establish emotional distress and reputational harm, Plaintiffs must allege facts to support such a claim. *Burnthorne-Martinez*, 2016 WL 6892721, at *6 (dismissing negligent FCRA violation claim because allegations of injury were "bald" and "conclusory"); *Dewi v. Wells Fargo Ban*k, No.

12-2891, 2012 WL 10423239, at *8-9 (C.D. Cal. Aug. 8, 2012) (a plaintiff must allege specific facts to support allegations of harm and not simply include them "in a laundry list of categories of damages"). Plaintiffs allege nothing in the way of actual damages under either the FCRA or the CCCRAA. The Court should dismiss Plaintiffs claims for violations of the FCRA and CCCRAA for lack of standing. *See, id.* (dismissing FCRA claim because plaintiff's allegation of "emotional distress" was "general and conclusory"); *Burnell v. Marin Humane Soc'y*, No. 14-CV-5635-JSC, 2015 WL 6746818, at *19 (N.D. Cal. Nov. 5, 2015) (dismissing intentional infliction of emotional distress claim where complaint lacked "any facts pertaining to the nature and extent of [p]laintiffs' emotional or mental suffering"); *Connelly v. Remkes*, No. 14-CV-1344-LHK, 2014 WL 5473144, at *13 (N.D. Cal. Oct. 28, 2014) (allegation that plaintiff "suffered great worry and concern" insufficient).

**E.    Plaintiffs Make No Plausible Allegations Against Wells Fargo & Company.**

Lastly, Plaintiffs failed to carry their burden of making plausible allegations that Wells Fargo & Company ("WFC")—a holding company that does not provide banking services—was involved in the transactions described in the SAC. SAC, ¶¶ 101 (Patterson), 119 (Jordan) ("On information and belief, the reference to 'WELLS FARGO' in the [Plaintiffs'] file disclosures refers to Wells Fargo & Co."). The Court need not accept implausible or conclusory allegations, which are the only claims Plaintiffs have alleged against WFC. Indeed, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678.

The Motion put forth the argument that WFC is a parent company, and the general rule regarding parent corporations and subsidiaries being treated as separate legal entities should prevail. Mot. at 18. The general rule of thumb is that "corporate separateness insulates a parent corporation from liability created by its subsidiary" which Plaintiffs have not addressed. *Id.* at 18-19. Further, Plaintiffs have not put forth any authority to support an argument related to an alter ego theory. *Id.* at 19. Accordingly, Plaintiffs have waived any substantive argument contrary to Wells Fargo's position that WFC should be dismissed with prejudice by exclusively relying on the claim "[WFC] is a properly named Defendant, because the SAC alleges [WFC] was involved in obtaining

1  Plaintiffs' […] credit reports […]." Opp. at 15. WFC must be dismissed with prejudice.

2  **III.**     <u>**CONCLUSION**</u>

3        For the foregoing reasons, Wells Fargo respectfully requests that Plaintiffs' claims against

4  Wells Fargo be dismissed with prejudice.

5

6

7  DATED: September 3, 2024          **MCGUIREWOODS LLP**

8

9

10                                         By: */s/ Molly M. White*
                                            David C. Powell, Esq.
11                                          dpowell@mcguirewoods.com
                                            Alicia A. Baiardo, Esq.
12                                          abaiardo@mcguirewoods.com
                                            Two Embarcadero Center, Suite 1300
13                                          San Francisco, CA 94111
                                            Telephone: 415.844.1970
14
                                            Molly M. White
15                                          mwhite@mcguirewoods.com
                                            1800 Century Park East, 8th Floor
16                                          Los Angeles, CA 90067-1501
                                            Telephone: 310.315.8200
17

18                                          *Attorneys for Wells Fargo & Company and Wells*
                                            *Fargo Bank, N.A.*
19

20

21

22

23

24

25

26

27

28

WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF THE MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of September 2024, the foregoing **WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** was filed electronically with the Clerk of Court for the Northern District of California by using the CM/ECF system. Counsel for all parties in this case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Molly M. White*
Molly M. White